**Mauro Roldan–Santoyo, Petitioner,**

v.

**Immigration and Naturalization Service, Respondent.**

**Nos. 96–70431, 99–70359.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 16, 2000.

Filed Aug. 1, 2000.

**Hector Tito LUJAN–ARMENDARIZ, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

732

Dorothea P. Kraeger, Phoenix, Arizona, for petitioner/appellant Hector Tito Lujan–Armendariz; Katherine Brady, Immigrant Legal Resource Center, Marc Van Der Hout, Donald Ungar, and Robert Jobe, San Francisco, California, for petitioner/appellant Mauro Roldan–Santoyo.

David W. Ogden, Acting Assistant Attorney General; Mark C. Walters, Assistant Director; and Margaret Perry, Department of Justice, Washington, D.C., for respondent/appellee.

Before: POLITZ,[1] REINHARDT, and HAWKINS, Circuit Judges.

REINHARDT, Circuit Judge:

This case involves two long-time residents found guilty of first time simple possession, and attempted simple possession, of narcotics, respectively. The INS seeks to remove them from the country, even though in both cases state courts have held that the petitioners are no longer "convicted" under state law, because both petitioners have received the benefit of state rehabilitative statutes. We hold that the petitioners before us do not presently stand "convicted" within the meaning of the immigration laws, and that they, therefore, are not subject to removal. We also hold that the Federal First Offender Act was not repealed in whole or in part by the recent amendments to the immigration laws,[2] and that persons whose offenses would qualify for treatment under the First Offender Act but who are convicted and have their convictions expunged under state laws may not be removed on account of those offenses.[3]

I.

The facts with respect to the consolidated petitions before us are straightforward. Hector Tito Lujan–Armendariz (hereinafter "Lujan") filed the first petition. Lujan has been in the United States since 1982 and became a legal resident in 1987. In 1989 he was convicted of attempted possession of narcotic drugs (cocaine) under Arizona law (A.R.S. § 13–3408), which was his first offense related to controlled substances. The state court suspended imposition of his sentence, and instead ordered

---

1. The Honorable Henry A. Politz, Senior Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

2. See 8 U.S.C. § 1101(a)(48), discussed *infra passim*.

3. Under the new immigration laws, aliens are now ordered "removed" rather than "deported." Both the petitioners here were initially placed in deportation proceedings under the old law, and therefore are technically subject to deportation rather than removal. Because the distinction between the two terms is of no relevance to the resolution of this case, we use the terms interchangeably.

him to serve five years of probation (and also to pay a fine). Subsequently, the INS sought to deport Lujan based on the offense.[4] At a hearing before an Immigration Judge, Lujan conceded he was deportable, but sought to depart voluntarily. This request was denied, and the IJ ordered Lujan deported. The BIA affirmed this decision.

When a significant change in the applicable law occurred,[5] Lujan sought an order from state court expunging his conviction. The state court entered an order "vacating the judgment of guilt and dismissing the charges against the defendant as stated in the application herein." Although the court's order mentioned no particular statute, both parties agree that the expungement occurred under Arizona Revised Statutes § 13–907. That statute provides that, upon application and fulfillment of relevant conditions, a judge "shall set aside the judgment of guilt, dismiss the accusations or information and order that the person be released from all penalties and disabilities resulting from the conviction."[6] Lujan then filed a motion to remand his case to an Immigration Judge, arguing that the conviction no longer made him deportable (and also that he could adjust his status based on his marriage to a U.S. citizen). The BIA denied his motion, holding that despite the state's action, Lujan stands "convicted" for immigration purposes. Lujan petitioned for review.

Mauro Roldan–Santoyo (hereinafter "Roldan") first entered the United States in 1982, and has been a legal resident since 1988. In 1993 he pled guilty, in Idaho, to simple possession of marijuana (under Id.

St. § 37–2732), which was his first offense relating to controlled substances. Following the plea, the court withheld judgment, but ordered Roldan to serve three years of probation, to pay several fines, and to serve up to ninety days in jail, at his probation officer's discretion. The court further stated that if Roldan successfully completed the probation, he could seek to have the charges dismissed, or alternatively to have the crime reduced to a misdemeanor.

Based on the state proceeding, the INS sought to deport Roldan in 1994. Roldan then sought expungement of his offense in state court, on the basis of his compliance with the terms of probation up to that time. The state of Idaho did not contest his motion, and the charges were dismissed. The state court's order stated that "It is herewith ordered that defendant is discharged from court probation. It is further ordered that this charge is dismissed pursuant to the withheld judgment and as far as this matter is concerned defendant shall not be considered a convicted felon under federal or state laws." Although the state court cited no law under which it was acting, both parties agree that the court acted pursuant to Idaho Code § 19–2604(1), which provides for the dismissal of cases where the judgment was withheld and the defendant has complied with the requisite probationary conditions. In spite of the state court's order, the INS argued, and the Immigration Judge found, that Roldan stands "convicted" for immigration purposes, and was thus deportable.[7]

---

**4.** The drug offense made him deportable by reason of his having been convicted of attempting to violate a controlled substance law, under former 8 U.S.C. § 1252(a)(2)(B) (1994) (repealed), now codified at 8 U.S.C. § 1227(a)(2)(B).

**5.** The change was our decisions in *Garberding v. INS*, 30 F.3d 1187, 1189 (9th Cir.1994), and *Paredes–Urrestarazu v. INS*, 36 F.3d 801, 811 (9th Cir.1994), and the ensuing BIA decision in *Matter of Manrique*, Int. Dec. 3250, 1995

WL 314732 (BIA 1995). We describe the change and the decisions in detail below.

**6.** The Arizona Statute cannot be used to expunge certain serious offenses, such as those involving the use of a deadly weapon or serious physical injury. In addition, the release "from all penalties and disabilities" is subject to some exceptions not relevant here.

**7.** The IJ also found Roldan ineligible for suspension of deportation, ruling that such relief

Roldan appealed to the Board of Immigration Appeals. While the appeal was pending, Congress enacted, for the first time, a statutory definition of a conviction for immigration purposes. Thus, the Board considered Roldan's claim under the new definition.[8] Sitting en banc, a divided Board of Immigration Appeals affirmed the decision of the Immigration Judge, holding that under the new definition the state court's order expunging Roldan's offense could not be given effect. Four Board Members dissented. Roldan petitioned for review.

## II.

■■■■ Initially, we must consider a jurisdictional issue. The INS alleges that the petitioners are removable by reason of their having been convicted of the criminal offenses described above. Our jurisdiction has been limited in cases involving the removal of aliens who have been convicted of certain criminal offenses. *See generally* 8 U.S.C. § 1252.[9] We do retain jurisdiction, however, to determine whether or not petitions challenging deportation orders are subject to the jurisdictional bar. Put another way, when an alien petitions for review of a removal order, we retain juris-

diction to determine whether we have jurisdiction to consider the petition. *Magana–Pizano v. INS*, 200 F.3d 603, 607 (9th Cir.1999); *Aragon–Ayon v. INS*, 206 F.3d 847, 849 (9th Cir.2000). Here, we hold that we do have jurisdiction to entertain the petitions because, as we explain below, neither petitioner stands "convicted" for purposes of the immigration laws. Thus, neither petitioner falls within the class of persons whose challenges to removal we are precluded from reviewing.[10]

## III.

Because the history of the legal developments in this area gives much-needed context to the question before us, we will describe that history in some detail.

■■■■ Courts have long dealt with the problem of what effect to give, for immigration and other purposes, to a finding of guilt that has been expunged under a state rehabilitation statute. The broad term "rehabilitation statute" describes a variety of long existing state laws that allow people found guilty of certain crimes to have their records cleared, usually based in part on their good behavior for a period of time following the finding of guilt.[11] In the

was retroactively eliminated by the new immigration law. We reached the opposite conclusion in *Magana–Pizano v. INS*, 200 F.3d 603, 610 (9th Cir.1999). However, because we find that Roldan is not subject to deportation, he need not apply for suspension of deportation.

8. The new definition appears to apply retroactively. *See* Illegal Immigration Reform and Immigrant Responsibility Act § 322(c). In any event, Roldan makes no statutory or constitutional challenge to the BIA's decision to apply the new definition in his case.

9. Specifically, the first petition (filed by Lujan–Armendariz) is governed by § 440(a) of the Anti–Terrorism and Effective Death Penalty Act, and the second (filed by Roldan–Santoyo) is governed by § 309(c)(4)(G) of the Illegal Immigration Reform and Immigrant Responsibility Act.

10. Even where jurisdiction by way of petition for review has been barred, federal district courts retain jurisdiction to entertain habeas

petitions filed by criminal aliens challenging their removal. *Flores–Miramontes v. INS*, 212 F.3d 1133, (9th Cir.2000); *Magana–Pizano v. INS*, 200 F.3d 603 (9th Cir.1999). The district court decisions regarding such petitions may of course be appealed to the courts of appeal.

11. For purposes of this opinion, it is necessary to distinguish between two types of rehabilitative laws. In some types, which we will refer to as "vacatur" or "set-aside" laws, a formal judgment of conviction is entered after a finding of guilt, but then is erased after the defendant has served a period of probation or imprisonment and his conviction is ordered dismissed by the judge. Lujan's conviction was set aside under such a law. In other types, which we will refer to as "deferred adjudication" laws, no formal judgment of conviction or guilt is ever entered. Instead, after the defendant pleads or is found guilty, entry of conviction is deferred, and then during or after a period of good behavior, the charges are dismissed and the judge orders

immigration context, the BIA held in 1951 that an alien could not be deported on the basis of a crime where the finding of guilt had been expunged. *Matter of O–T–,* 4 I & N Dec. 265, 1951 WL 6998 (BIA 1951). Later, however, the Attorney General held that this rule did not apply to drug offenses: such offenses could result in deportation even if they were expunged. *Matter of A—F—,* 8 I & N Dec. 429, 1959 WL 11595 (AG 1959). This remained the rule for all drug offenses until 1970, when Congress adopted the Federal First Offender Act (hereinafter "the First Offender Act" or "the Act"), a rehabilitation statute that applies exclusively to first time drug offenders who are guilty only of simple possession.[12] Both before and after the passage of the Act, the broad schemes for the rehabilitation of offenses under state law continued to serve as an important means of lessening the consequences of certain convictions, including avoiding deportations which would otherwise be excessively harsh.

 The First Offender Act is a limited federal rehabilitation statute that permits first-time drug offenders who commit the least serious type of drug offense to avoid the drastic consequences which typically follow a finding of guilt in drug cases. The Act allows the court to sentence the defendant in a manner that prevents him from suffering *any* disability imposed by law on account of the finding of guilt.

Under the Act, the finding of guilt is expunged and no legal consequences may be imposed as a result of the defendant's having committed the offense. The Act's ameliorative provisions apply for *all* purposes.

 The rule prescribed in the First Offender Act has been applied in deportation cases regardless of whether the finding of guilt was obtained under the federal statute or under state law. Equally important, the rule applies regardless of the procedural differences associated with the various state statutes. While some state procedures allow, as does the First Offender Act, for deferral of conviction itself, such that no judgment of conviction is entered after a finding of guilt, under other state procedures a judgment of guilt is entered, but later erased. *See supra* note 11. As we explain below, both this court and the BIA have held that such distinctions are irrelevant for purposes of the First Offender Act. *Garberding v. INS,* 30 F.3d 1187, 1189 (9th Cir.1994); *Matter of Manrique,* Int. Dec. 3250, 1995 WL 314732 (BIA 1995). In sum, the protection against deportation that results from the Act's expungement of first-time simple possession drug offenses has been applied not only with respect to offenses expunged directly under the Act, but also in the case of offenses expunged under state rehabilitative laws, regardless of whether the state law allows for the entry of a judgment of

the defendant discharged. Roldan's offense was expunged under the latter type of law.

When referring to both types of laws, we will call them "rehabilitative" or "rehabilitation" laws, or "expungement" laws. We realize that "expungement" is to some extent a misnomer, because under a deferred adjudication statute there is no conviction to expunge, as no conviction is ever entered. However, even in such cases, certain findings or other records may be expunged. More important, the use of the term "expungement" significantly facilitates our discussion. Thus, while the federal law which we describe in some detail—the Federal First Offender Act—is a deferred adjudication law, rather than a vacatur or set-aside law, we will sometimes use the term "expungement" when re-

ferring to what occurs under that law, as well as under the various types of state statutes.

When discussing findings of guilt, guilty pleas, and the formal judgment and record of the offenses committed by those who receive the benefit of expungement laws, we will ordinarily refer to "findings of guilt" or "offenses" rather than "convictions," (except where the statute expressly provides for entry of a conviction) because the question whether such persons stand "convicted" is the ultimate issue we must resolve in such cases. Although this produces awkward syntax at times, in the end we believe it facilitates an understanding of the issues.

**12.** The Act is currently codified at 18 U.S.C. § 3607.

conviction and its later expungement or provides for a deferred adjudication procedure similar to that utilized in the Act. *Garberding*, 30 F.3d at 1190–91.

Before proceeding further, it is important to recognize that the differing rules for expungements generally and for expungements of first time drug possession offenses reflect two different policies, exist for two different reasons, and have spawned two distinct bodies of law. The general state laws allowing for expungements have existed for as long as states have sought to determine the appropriate treatment of criminal offenders, and have applied to various offenses based on various policy rationales. The BIA's decisional law regarding expungements, which has developed over a substantial period of years, has aimed at adopting a consistent rule for determining when those state rehabilitative schemes should be given effect for purposes of the federal government's immigration laws—that is, for determining under what circumstances, if any, the federal government may consider someone "convicted" when the state determines not to do so. The question of what effect to give state rehabilitation laws necessarily arises whenever the federal government seeks to deport someone on the basis of a finding of guilt that was both entered and expunged under state law. It may also arise when a finding has been entered but has not yet been expunged.[13] In contrast, the BIA's rule regarding first time drug

possession offenses was adopted when Congress passed the First Offender Act in 1970.[14] At that time drug possession was widespread, particularly among young people, many of whom were otherwise law-abiding, and the Act was designed to ensure that the various harsh consequences that normally flow from a criminal conviction would not affect individuals found guilty of a first-time simple drug possession offense. While the BIA's general policy had been to refuse to recognize the expungement of drug convictions, the Act overrode that policy in part, and compelled the BIA to adopt an exception to its rule—an exception for people found guilty of first-time simple drug possession.

■ It is with this background in mind that we must examine the change in law which is the subject of these petitions for review. In 1996, Congress passed, as part of a broad series of changes to the immigration laws, a federal definition of "conviction" for immigration purposes. It is evident that the new definition represents a Congressional attempt to clear up the general confusion over when a conviction exists for immigration purposes, in light of the various state procedures governing expungement. Congress expressed dissatisfaction with the BIA's somewhat legalistic approach to this question and with the somewhat arbitrary way in which the BIA applied its expungement rules to persons whose cases were processed under sub-

---

**13.** Actually, there are two related problems concerning state rehabilitation laws which correspond to the two different kinds of rehabilitative statutes. One problem concerns whether the federal government should consider a person "convicted" despite his having had his conviction vacated or set aside under state law. The other concerns whether the federal government should consider a person convicted where adjudication has been deferred (and no conviction has technically been entered), but the person has not yet successfully completed his probation, and thus the record of the offense has not yet been expunged. *See supra* note 11. The BIA's most recent attempt to deal with these problems came in *Matter of Ozkok*, 19 I & N Dec. 546, 1988 WL 235459 (BIA 1988). In that case,

the BIA stated, with respect to the first problem, that a conviction that had been expunged could not support a deportation order. With respect to the second, concerning a defendant's status while in the process of a deferred adjudication, the BIA held that some kinds of pending deferred adjudication proceedings bar deportation, but others do not, depending on the nature of the procedural mechanism involved. We discuss *Ozkok* in detail below.

**14.** The Act was passed as part of the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513 (1970). It was originally codified at 21 U.S.C. § 844(b).

stantively similar but procedurally different state statutes.[15]

While it is clear that the new definition substantially changes the BIA's prior rules governing how it determines *when* a conviction occurs under state rehabilitative laws, we must decide whether, in addition, the new definition *also* repeals in part the Federal First Offender Act, and thus the rule that bars deportation of first-time drug offenders guilty only of simple possession. If we find the Act is not repealed, we must also decide whether the rule applying the Act's protection to identical offenses prosecuted and expunged under state law remains in force.

## A. Expungement of First Time Simple Drug Possession Offenses

■■■ Although the BIA had ruled, in *Matter of A—F—*, prior to the enactment of the First Offender Act, that it would not recognize expungements of any drug convictions, that broad a rule could not survive the passage of the Act. The First Offender Act allows persons who have never previously violated the narcotics laws and are found guilty of first time simple drug possession to have the charges dismissed without entry of a conviction, provided that the judge deems them suitable for such treatment. The law applies to citizens and aliens alike, and allows those who benefit from it to avoid having their offenses used against them for any purpose. The statute provides that a case

disposed of under its provisions "shall not be considered a conviction for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, *or for any other purpose.*" 18 U.S.C. § 3607(b) (emphasis added); *Garberding*, 30 F.3d at 1189.[16] In short, the statute constitutes a broad Congressional effort to afford protection to first time drug possessors against the harsh consequences that follow from a drug conviction.

Following the Act's passage, the BIA held that, consistent with the Act, a first time drug possession offense expunged under its provisions could not be used as a predicate for deportation. *Matter of Werk*, 16 I & N Dec. 234, 1977 WL 39259 (BIA 1977). At that time, some states had "counterparts" to the federal government's Act—parallel laws which provided for the expungement of a first offense for simple possession of narcotics under state law. The BIA held that aliens receiving relief under such statutes also would not be subject to deportation. *Id.*

However, under the BIA's initial rule, not all aliens whose first-time drug possession offenses were expunged under state expungement laws could receive relief. Some of the states did not have exact counterparts to the First Offender Act, but instead utilized general rehabilitation statutes. General rehabilitation laws were not necessarily limited to expungement of *drug possession* offenses or expungement

---

15. *See, e.g.,* H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 224 (1996). The legislative history is discussed further in note 23, *infra.*

16. The relevant portions of the Act state that:
(a) ... If a person found guilty of [simple possession of a controlled substance]
(1) has not, prior to the commission of such offense, been convicted of violating a Federal or State law relating to controlled substances; and
(2) has not previously been the subject of a disposition under this subsection;
the court may ... place him on probation for a term of not more than one year without entering a judgment of conviction. At any time before the expiration of the term of probation, if the person has not violated

a condition of his probation, the court may, without entering a judgment of conviction, dismiss the proceedings against the person and discharge him from probation. At the expiration of the term of probation, if the person has not violated a condition of his probation, the court shall, without entering a judgment of conviction, dismiss the proceedings against the person and discharge him from probation....
(b) ... A disposition under subsection (a) ... shall not be considered a conviction for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, or for any other purpose.
18 U.S.C. § 3607.

of *first* offenses. The BIA initially held that if a state's rehabilitation statute was broader than the federal Act, a defendant who received the benefit of an expungement under that state's statute remained subject to deportation, even if the crime involved was only a first offense of simple drug possession (i.e., even if the offense could have been expunged under the Act had the crime been prosecuted under federal law). *Matter of Deris,* 20 I & N Dec. 5, 1989 WL 331858 (BIA 1989).

In *Garberding v. INS,* 30 F.3d 1187, 1190 (9th Cir.1994), we rejected the rule that only expungements under exact state counterparts to the Act could be given effect in deportation proceedings, because the rule was inconsistent with the equal protection guarantees of the Constitution. *Id.* at 1190 (citing *Johnson v. Robison,* 415 U.S. 361, 364 n. 4, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974)). We held that there was no rational basis for treating two persons found guilty of the identical conduct differently based on the breadth of the rehabilitation statutes in their respective states, when both persons were eligible for relief under their own state's law and both would have been eligible had the state law been an exact counterpart of the federal Act. "Had [Garberding] possessed her marijuana in Michigan, Virginia or Wisconsin, she would not have been subject to deportation .... distinguishing Garberding for deportation because of the breadth of Montana's expungement statute, not because of what she did, has no logical relation to the fair administration of the immigration laws or the so-called 'war on drugs.'" *Garberding,* 30 F.3d at 1191. Thus, under *Garberding,* persons who received the benefit of a state expungement law were *not* subject to deportation as long as they *could* have received the benefit of the federal Act if they had been prosecuted under federal law.

Subsequently, in *Paredes–Urrestarazu v. INS,* 36 F.3d 801, 811 (9th Cir.1994) (hereinafter "*Paredes*"), a case involving a California pre-trial diversion program, we set forth the corollary of the *Garberding* rule, and held that persons found guilty of a drug offense who could *not* have received the benefit of the federal Act were not entitled to receive favorable immigration treatment, even if they qualified for such treatment under state law. *Id.* at 812.[17] We emphasized, however, that the petitioner in *Paredes* would be entitled to relief if he met the requirements of the federal law, *id.* at 811, because it would be "anomalous" to give effect to the federal expungement statute while not giving effect to its state counterparts; we found no rational reason to reach different results based on "the mere fortuity that the state, and not the federal government, prosecutes an alien for a particular offense." *Id.* at 812. Nevertheless, because the petitioner was not eligible for relief under the federal Act, we concluded that he could not receive the benefit of the state's rehabilitation law.

The rule we declared to be constitutionally required was formally adopted by the BIA in *Matter of Manrique,* Int. Dec. 3250, 1995 BIA Lexis at *14. In its decision, the BIA cited both *Garberding* and *Paredes,* and held that in simple drug possession cases any alien "who has been accorded rehabilitative treatment under a state statute will not be deported if he establishes that he would have been eligible for federal first offender treatment under the provisions of [the Federal First Offender Act] had he been prosecuted under federal law." *Id.,* 1995 BIA Lexis at *9. Under the law as it stood after *Garberding, Paredes,* and *Manrique,* the petitioners here would not have been subject to removal.[18]

---

**17.** Although *Paredes* dealt with the section of the Act concerning youth offenders, its reasoning applies equally to the other portions of the statute.

**18.** The BIA held, in part, that petitioner Lujan–Armendariz did not qualify for relief because his conviction did not involve a deferred adjudication of guilt, but instead involved a vacatur. It is true that the Fed-

## B. Expungement of Offenses for Crimes Generally Under State Law

As we stated earlier, the BIA held as early as 1951 that offenses for crimes expunged under state rehabilitation laws would not count as convictions for deportation purposes. While the BIA subsequently excluded drug offenses from this rule, the law concerning expungements for other offenses continued to develop. Although the law was relatively simple when there were only a few state rehabilitation statutes, it became more complex as the number and diversity of those statutes increased. Indeed, as the INS explained in its brief, there was considerable debate within the agency over the propriety of the general rule that expungements under state law should be honored for purposes of federal immigration law, regardless of the nature of the offense. Opponents argued that the effect of the rule was to allow aliens to escape deportation based on lenient state policies, despite the fact that they had committed criminal offenses and would otherwise be eligible for deportation

eral First Offender Act involves deferred adjudication of guilt rather than vacatur, and that under the state law Lujan's conviction was entered and then vacated rather than deferred. Nonetheless, Lujan was entitled to relief under the rule we established in *Garberding*, and the BIA implemented in *Manrique*. We held in *Garberding* that the determining factor is whether the petitioner would have been eligible for relief under the federal law and in fact received relief under a state law, not whether the particular state law at issue utilizes a process identical to that used under the federal government's scheme. *Garberding*, 30 F.3d at 1191. We stressed that the critical question is not the nature of the state's expungement statute but rather "what [the petitioner] did." *Id.*

The test adopted by the BIA in *Manrique*, which implemented our decision, makes clear that Lujan qualifies for relief. Under that test, an alien qualifies for relief if he is a first offender, is guilty only of simple possession, has not previously been accorded first offender treatment, and "[t]he court has entered an order pursuant to a state rehabilitative statute under which the alien's criminal proceedings have been deferred pending successful completion of probation *or* the proceedings have been or will be dismissed after probation." *Manrique*, Int Dec. 3250, 1995 BIA Lexis at *9 (emphasis added). Lujan unquestionably meets the first three criteria. While the BIA held that he did not meet the fourth, this is incorrect. An Arizona court entered an order pursuant to a state rehabilitative statute dismissing the proceedings against him after he completed a term of probation. As should be obvious from our decisions in *Garberding* and *Paredes* and the BIA's decision in *Manrique*, relief does not depend upon whether or not the state rehabilitative statute in question is best understood as allowing for "vacaturs," "set-asides," "deferred adjudications," or some other procedure. Rather, the relevant question is whether the person involved could have received relief under the Federal First Offender Act and does receive relief under a state rehabilitation statute. In short, if the person's crime was a first-time drug offense, involved only simple possession or its equivalent, and the offense has been expunged under a state statute, the expunged offense may not be used as a basis for deportation.

We note one qualification. The BIA's decision in *Manrique*, unlike our decision in *Garberding*, appears to limit its rule in one potentially important respect. Under *Manrique*, it appears that an otherwise eligible offender can only qualify for relief if he receives *probation*, as opposed to imprisonment, and then later has the record of his sentence expunged. Because Lujan, like Roldan, was sentenced to probation (although his probation included a jail term), we need not decide if this limitation constitutes an acceptable interpretation of our rule in *Garberding*. In practice, there are probably few, if any, first time drug offenders found guilty of simple possession who are sentenced to imprisonment rather than probation (with or without a jail term) and who are not otherwise deportable.

The INS has made no attempt, on appeal, to defend the BIA's reasoning regarding the procedure governing Lujan's expungement, and does not argue before us that the protections of the First Offender Act are inapplicable to vacaturs as opposed to deferred adjudications. Rather, the INS now argues that, for purposes of immigration law, the new definition eliminates all of the protections of the Act—i.e. that the First Offender Act has in effect been partially repealed and first time drug offenders who are guilty only of simple possession are to be deported. In the alternative, it argues that, even if the Act remains fully in effect, the BIA has properly determined that it will no longer recognize similar expungements of first-time drug possession offenses under state statutes. *See* discussion *infra*, section VI.

based on the straightforward application of federal statutes in an area traditionally dominated by considerations of federal policy. Nonetheless, the BIA adhered to its rule that offenses expunged under state law could not serve as the basis for deportation, although in some cases the INS urged the opposite result. *See e.g., Matter of G—*, 9 I & N Dec. 159, 1960 WL 12078 (BIA 1960). The BIA felt compelled to honor expungements outside the narcotics context because, *inter alia*, it concluded that it owed deference to dispositions under state law. *See id.*

A related but distinct set of problems arose because of the existence of one particular form of rehabilitation statute, known as "deferred adjudication" laws. Under such laws, a person found guilty (or who pled guilty) could be put on probation even though no conviction was ever entered. Then, if that person violated the terms of probation, further proceedings might or might not be necessary before the person could be convicted and sentenced. In deferred adjudication cases, it was not clear whether a conviction existed sufficient to support a deportation order *prior to the completion of proceedings*, because, while guilt had been established, no judgment of conviction had been entered. In short, the INS was not certain whether it could deport persons who were still in a deferred adjudication status, even

though it was free to deport persons whose convictions had not yet been vacated or set aside. In 1955 the Supreme Court held, in an extremely short per curiam opinion, that where a Massachussetts rehabilitative procedure, which resembled at least some forms of contemporary deferred adjudication laws, was employed, the alien, whose case had been placed in an "on-file" status, had not been convicted and could not be deported. *Pino v. Landon*, 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239 (1955) (per curiam).[19] After this decision, the BIA attempted to develop a uniform federal standard for purposes of determining whether a defendant had been "convicted," and thus whether he could be deported even though he was in deferred adjudication status.[20]

The most recent attempt by the Board to create a uniform standard came in *Matter of Ozkok*, 19 I & N Dec. 546, 1988 WL 235459 (BIA 1988).[21] The definition announced in that case drew a sharp line between two different kinds of deferred adjudication statutes. Under the Board's decision, a deferred adjudication would be considered a conviction for deportation purposes if a formal judgment of conviction could be entered immediately following a probation violation, but not if further proceedings were required first. The BIA stated that

**19.** The Massachussetts law at issue is described in the First Circuit's opinion which the Supreme Court reversed. *Pino v. Nicolls*, 215 F.2d 237, 241–42 (1st Cir.1954) *reversed by Pino v. Landon*, 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239 (1955) (per curiam). Pino's case was placed under "on-file" status and his sentence was suspended following a finding of guilt. He argued that he could force the district court to enter judgment and then take an appeal, after which his conviction could be reversed. *Id.* at 242. The existence of this possibility, he claimed, precluded a finding that a final conviction existed for immigration purposes.

**20.** The BIA had previously adopted one definition to deal with this problem in *Matter of O—*, 7 I & N Dec. 539, 1957 WL 10570 (BIA 1957) and then a different one in *Matter of L–*

R–, 8 I & N Dec. 269, 1959 WL 11561 (BIA 1959).

**21.** Within the category of "deferred adjudication" statutes, there are those which allow for an entry of conviction immediately upon the defendant's violation of the terms of release, and those which require further proceedings before a conviction can be entered following a violation of release conditions. In addition, other state laws effectively defer adjudication by allowing for the withdrawal of a guilty plea and dismissal of the indictment after a probationary period, and through other similar state law procedures. For a description of these and other state procedures, *see Matter of Ozkok*, 19 I & N Dec. 546, 550, 1988 WL 235459 (BIA 1988) (collecting cases describing different state law rehabilitative procedures). *See also* n. 13 *supra*.

As in the past, we shall consider a person convicted if the court has adjudicated him guilty or has entered a formal judgment of guilt. . . .

Where adjudication of guilt has been withheld, however, further examination of the specific procedure used and the state authority under which the court acted will be necessary. As a general rule, a conviction will be found for immigration purposes where all of the following elements are present:

(1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilty;

(2) the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed . . . and

(3) a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge. . . .

We note that a conviction for a crime involving moral turpitude may not support an order of deportation if it has been expunged. We shall continue in this regard to follow the rule which was set forth by the Attorney General in *Matter of G—*, supra, and subsequently reaffirmed in *Matter of Ibarra–Obando*, 12 I & N Dec. 576, 1966 WL 14403 (BIA 1966), and *Matter of Gutnick*, 13 I & N Dec. 672, 1971 WL 24396 (BIA 1971).

*Ozkok*, 19 I & N Dec. at 551–52.[22]

Notably, the Board's decision in *Ozkok* left intact the longstanding rule that, in general, a conviction "may not support an order of deportation if it has been expunged." *Id.* at 552. Thus, under *Ozkok*,

regardless of the form of deferred adjudication, once a defendant has completed the requisite term of probation and has succeeded in having his offense expunged, he no longer stands convicted.

*Ozkok*'s primary focus was on the resolution of the question whether persons whose cases are being processed under a deferred adjudication statute may be deported after a finding of guilt but *before* completion of probation and *the expungement of their record.* See, e.g., *Matter of Garcia*, 19 I & N Dec. 270, 274, 1985 WL 56047 (BIA 1985) (finding defendant not "convicted" for purposes of deportation where defendant was subject to deferred adjudication, and INS sought to deport him prior to expiration of probationary period). The third prong of the test quoted above deals with this subject by distinguishing between the two types of deferred adjudication statutes. Under the third *Ozkok* prong, when the state statute in question provides that upon a probation violation a judgment of conviction may be entered without further proceedings, the defendant stands "convicted," but when the statute requires further proceedings prior to entering the conviction and imposing punishment, no "conviction" occurs. The rule adopted in *Ozkok* may have made some sense from a strictly legalistic standpoint, but it made the question of an alien's deportability depend on the procedural niceties of the particular statutory provision rather than on anything having to do with the alien's criminal conduct or the court's assessment of it. As a result, it failed to end the debate over the effect to be given deferred adjudications in deportation cases in general.

## C. The New Federal Definition of Conviction in the Immigration Statute

In 1996, as part of a broad series of changes to the immigration laws, Congress

---

**22.** Both *Matter of Gutnick* and *Matter of G—* clearly involve convictions which were entered and later expunged, rather than deferred adjudications. See *Gutnick*, 13 I & N Dec. at 676–77; *G—*, 9 I & N Dec 159, 159, 1960 WL 12078 (BIA 1960).

for the first time decided to deal explicitly with the meaning of the word "conviction." It enacted a statutory definition of that term for immigration purposes. That definition provides that:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
>
> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A).

■ Without question, the new definition eliminated the distinction between the different types of deferred adjudication statutes set forth in the third prong of the *Ozkok* definition. It is clear that Congress intended the new definition to mean, generally, that a conviction occurs prior to the time the probationary period begins in cases processed under state deferred adjudication laws, regardless of whether the state statute requires further proceedings prior to the formal entry of a judgment of conviction in the event of a probation violation. The BIA's decision in *Ozkok* is specifically discussed in the legislative history of the new definition, and Congress adopted verbatim the first two sub-parts of the *Ozkok* definition, while notably omitting the third.[23]

The INS argues, however, that the effect of the definition goes further. According to the INS, the new definition not only eliminates the specific rule that where further proceedings are required a deferred adjudication does not constitute a conviction, it also eliminates the general rule that convictions *expunged* under state rehabilitative laws may not serve as the basis for deportation. The INS's position is that, as a result of the recent statutory amendment, even after a conviction (or the record involved in a deferred adjudication) has been expunged under a state rehabilitative statute, the court's earlier determination of guilt must still be treated as a conviction for immigration purposes.

Although we find the INS's argument highly unpersuasive, *see inter alia* note 24 *supra*, we need not resolve the question definitively in order to decide the case before us. The question we must decide is not what effect the new definition has on state expungements under state rehabilitation laws in general, but whether the new definition repeals the First Offender Act in whole or in part, and, along with it, the rule we established in *Garberding* and *Paredes*, which requires similar treatment for first-time simple drug possession offenses prosecuted and expunged under state laws. As we have explained, the Act prohibits the use of offenses expunged pursuant to its provisions "for any purpose," and that rule has been extended to similar state

---

**23.** The Joint Conference Report for the new immigration statute discusses deferred adjudications under *Ozkok* in some detail. While it expresses general approval of *Ozkok*'s approach, it adds that *Ozkok* "does not go far enough". The report concludes that "by removing the third prong of *Ozkok*, [the new definition] clarifies Congressional intent that even in cases where adjudication is 'deferred,' the original finding or confession of guilt is sufficient to establish a 'conviction' for purposes of the immigration laws." H.R. Conf. Rep. No. 104–828, at 224 (1996). While Congress specifically commented on the need to eliminate the BIA's bifurcated rule regarding deferred adjudications, it did not mention the rule, cited with approval by the BIA in *Ozkok*, that *expunged* convictions *cannot* serve as the basis for deportation. Thus, it appears that Congress was concerned primarily, as had been the BIA, with the question whether aliens could be deported during the period that followed a determination of guilt but preceded the expungement of the offense, and not with attempting to alter the longstanding rule that convictions that are subsequently overruled, vacated, or otherwise erased no longer have any effect for immigration or most other purposes (or, as in the case of the Federal First Offender Act, have no effect for *any* other purpose.)

expungements.[24] Therefore, unless the new definition is construed as repealing the Act, insofar as it applies to immigration laws, the petitioners are entitled to prevail here.[25] Ultimately, the INS squarely meets this issue by asserting not only that the new definition of the term "conviction" prevents the agency, as a general matter, from recognizing rehabilitative actions taken by the states pursuant to deferred adjudication and other state rehabilitative laws, but also that it repeals the First Offender Act, insofar as it applies to deportation proceedings.[26]

## IV.

 Straightforward principles of statutory construction require that we reject the INS's argument that the enactment of the statutory definition of the term "conviction" serves to partially repeal the Federal First Offender Act. The text of the new immigration law does not on its face repeal the Act. Indeed, the new law does not mention the Act. Thus, if there is a repeal, partial or whole, it must be by implication. In general, repeals by implication are "heavily disfavored," and may be found only where two statutes are in irreconcilable conflict or where one statute entirely displaces another. *NLRB v. Kolkka*, 170 F.3d 937, 941 (9th Cir.1999). In either case, the repeal must be "clear and manifest." The Supreme Court has set forth the applicable rule as follows:

It is, of course, a cardinal principle of statutory construction that repeals by implication are not favored. [citing cases] There are, however, two well-settled categories of repeals by implication (1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, the intention of the legislature to repeal must be clear and manifest.

*Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976) (internal quotations omitted); *see also In re Glacier Bay*, 944 F.2d 577, 581 (9th Cir.1991).

---

**24.** At oral argument, counsel for the INS implied that *Garberding* and *Paredes* did not stand for the proposition that·equal protection requires that the INS treat federal and state expungement statutes similarly. This is incorrect. While it is true that the facts in *Garberding* concerned different treatment under parallel state statutes, rather than federal and state statutes, it is evident that our reasoning in that case applies equally in both contexts. Moreover, we have explicitly stated that no rational basis exists for affording relief to an alien under the federal expungement law while denying relief to identically situated aliens who qualify for similar treatment under state expungement laws. *Paredes*, 36 F.3d at 811. The BIA also recognized that there is no rational basis for such a distinction. *Matter of Werk*, 16 I & N Dec. 234, 1977 WL 39259 (BIA 1977); *Matter of Manrique*, Int. Dec. 3250, 1995 WL 314732 (BIA 1995) (citing *Garberding* and *Paredes* ). Most important, INS counsel offered no reason, and we cannot conceive of any, why Congress would have wanted aliens found guilty of federal drug crimes to be treated more leniently than aliens found guilty of state drug crimes.

**25.** As explained earlier, both Lujan and Roldan would have been eligible for relief had they been prosecuted under the Act, and under *Garberding* and *Paredes* they are entitled to receive the same protections as a result of the expungements entered under state law.

**26.** Despite the parties' apparent beliefs, we *cannot* resolve this case by reference to the rules governing the treatment of expungements under state law generally. The BIA's rule, since at least 1959, has been that state expungements do not erase drug offenses, and the only exception to this rule is for offenses that could have been expunged under the First Offender Act. Thus, whether or not the INS may, in general, deport someone based on a conviction expunged under state law is irrelevant in this case. Because both petitions before us involve first time drug possession offenses, we must resolve this matter by determining whether the First Offender Act survives the adoption of the new definition, and then, if it does, whether *Garberding* and *Paredes* bar petitioners' deportations.

Irreconcilable conflict will not be found merely because two statutes compel different results in a particular case. *Radzanower*, 426 U.S. at 155, 96 S.Ct. 1989; *United States v. Batchelder*, 442 U.S. 114, 122, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). Rather, there must be a "repugnancy" between the words or purposes of the two statutes. *Donaldson v. United States*, 653 F.2d 414, 418 (9th Cir.1981). If the statutes are capable of coexistence, it is the duty of the courts to regard each as effective. *Id.* Put another way, even when two statutes are in some conflict, "[r]epeal is to be regarded as implied only if necessary to make the [later-enacted law] work, and even then, only to the minimum extent necessary." *NLRB v. Kolkka*, 170 F.3d 937, 941 (9th Cir.1999) (internal quotation omitted).

Here, neither category of repeal by implication is applicable, and in any event the legislature's intent is not "clear and manifest." The second category of implied repeals obviously does not apply. It is clear that the new immigration statute was not intended to "cover the whole subject" of the Federal First Offender Act. Therefore, the only question that requires discussion is whether two laws are in irreconcilable conflict. There are three reasons we find no such conflict.

## A. Irreconcilable Conflict

First, whatever the purpose of the new definition of "conviction" as it affects state convictions in general, the provision need not be read as effecting an implied partial repeal of the First Offender Act. The two statutes may be construed in a manner that resolves any potential conflict by establishing a narrow exception to the later statute for proceedings subject to the earlier Act: under such a construction of the new definition, a conviction occurs whenever there is a finding or admission of guilt coupled with some punishment, except where that finding is directly subject to the First Offender Act or would be subject to it *and* has been expunged pursuant to a state rehabilitation statute.

Both this court and the Supreme Court have found no irreconcilable conflict where, by creating minor exceptions to later-enacted statutes based on earlier ones, both statutes can be preserved. The closest analogy may be found in *Donaldson v. United States*, 653 F.2d 414 (9th Cir.1981), where we considered two statutes imposing different duties on the United States Navy in its capacity as the operator of a lake resort. Donaldson broke his neck when he dove into a reservoir operated, partly for recreational purposes, by the Navy. The earlier-enacted statute imposed stringent duties upon resort owners, with which the Navy did not comply. However, the later-enacted statute, which applied to *all* real property owners, stated that the owner "owes no duty of care to keep the premises safe for ... any recreational purpose." *Id.* at 416 n. 1.

We found no conflict, holding that the resort provision "can continue as a minor exception to the general rule set forth in [the later statute] without shredding the protection of landowners that the latter section was intended by the legislature to forge. At most this leaves a small puncture in a broad shield." *Id.* at 418. The relationship between the statutes before us is analogous to that in *Donaldson*. Even if the INS's interpretation of the new law were generally correct and the new definition did eliminate the effect of rehabilitative statutes in the immigration context generally, the First Offender Act could continue to function as a "minor exception," covering only one small category of first-time offenses—a minor exception that would not frustrate the broad purposes of the new definition.

Other cases have reached similar results. In *Radzanower*, the Supreme Court declined to find an implied repeal of an earlier-enacted venue provision for national banks, even though a later-enacted inconsistent venue provision for securities actions applied, by its terms, to a broad

class of institutions that included national banks. 426 U.S. at 153, 96 S.Ct. 1989.[27] As in *Donaldson,* the Court found that the earlier provision established a narrow exception to the broad, later-enacted provision, rather than holding that the two statutes were in irreconcilable conflict.

We have also declined to find irreconcilable conflict in a recent case involving a later-enacted immigration statute and an earlier-enacted statute concerning a different area. In *NLRB v. Kolkka,* 170 F.3d 937 (9th Cir.1999), we considered an employer's argument that as a result of the passage of the Immigration Reform and Control Act (IRCA), undocumented aliens were no longer protected by the National Labor Relations Act (NLRA). Although the earlier-enacted statute, by its terms, protected the alien workers, the defendant argued that the provision had been partially repealed by implication—in the immigration context—because IRCA makes it illegal to employ undocumented workers. *Id.* at 940. We found no irreconcilable conflict, holding instead that both statutes could be preserved. Specifically, we concluded that an employer could not, in order to enforce IRCA, violate the NLRA and expressly rejected the employer's argument that the later statute effected "an implied [partial] statutory repeal" of the earlier act. *Id.* at 941.

■■■■■ These cases alone dictate our conclusion that there is no irreconcilable conflict between the two statutes at issue here, and therefore no basis for finding an implied repeal. We need only construe the later-enacted immigration law as subject to the minor exception required by the provisions of the earlier-enacted First Offender Act. Under the construction that precedent requires us to adopt, the small number of aliens who commit first time simple drug possession offenses that are expunged are not subject to removal on

account of those offenses, but all others "convicted" of drug or other offenses covered by the immigration laws, are. Thus, we follow the mandate of Supreme Court and Ninth Circuit precedents in rejecting the suggestion of repeal by implication where the earlier statute can be preserved by reading a minor exception into the later statute.

**B. The Purpose of the New Definition**

■■■■■ There is a second reason that the applicable rules of statutory construction require us to reject the INS's argument. In order for us to find an implied repeal, it would have to be clear that Congress intended to repeal the First Offender Act; or, to put it in the words of *Radzanower,* "the intention of the legislature to repeal [would have to be] clear and manifest." 426 U.S. at 154, 96 S.Ct. 1989 (internal quotation omitted). However, as our description of the statutory and legislative history reveals, it seems quite apparent that Congress's purpose in enacting the new definition of the term "conviction" was *not* to work a repeal of the Act, in whole or in part. Instead, the purpose of the amendment appears to have been to establish the time at which a particular type of proceeding, specifically, deferred adjudication, results in a conviction for immigration purposes—not to alter the long-standing rule that a conviction entered but subsequently vacated or set aside cannot serve as the basis for a deportation order. Under the interpretation we find most probable, Congress intended, as a general matter, to allow for the deportation of aliens found guilty under state laws prior to the time their offenses were actually expunged, regardless of whether or not the finding was formally a "conviction" as a matter of state law— more particularly, regardless of whether or not the entry of conviction had been

---

**27.** The older law stated that national banks could only be sued in the district in which they were established, while the later law stated that any defendant in a suit to enforce

a duty created under the Securities Exchange Act could be sued wherever the transaction at issue took place. *Id.* at 150, 96 S.Ct. 1989.

deferred. We do not believe, however, that Congress intended to eliminate the longstanding rule that when a conviction or finding of guilt has actually been expunged, it may not thereafter be used as the basis for removal. As we explained above, both the legislative history and the language of the statute, viewed in relation to the prior administrative case law, particularly *Ozkok*, make the interpretation we favor by far the most likely one.

If, as we believe, Congress intended to address only the question of the time at which certain proceedings result in a conviction, then the new definition obviously does not impliedly repeal the First Offender Act for purposes of immigration law.[28] But we need not finally resolve the question of Congress's purpose in enacting the

new definition. It is enough to conclude that Congress did not demonstrate a "clear and manifest" intention to repeal the Federal First Offender Act, in whole or in part;[29] and we so conclude, without the slightest hesitation here. Accordingly, under *Radzanower*, we are required to hold that no implied repeal occurred.

## C. Implied Exceptions

■ Third, the INS's argument that the new definition's all-inclusive language does not permit an implied exception for the First Offender Act is wholly unpersuasive in light of its concession that the definition contains other implied exceptions. The INS concedes, and we agree, that Congress did not intend that a con-

---

**28.** Construing the statute as determining the time at which a conviction occurs, as a general matter, would leave open the question whether the Act precludes deportation of an alien who has received a deferred adjudication but has not yet had his proceedings expunged because he has not completed his term of probation and therefore has not yet satisfied a judge that dismissal of the offense is warranted. Our review of the history and purpose of the Act strongly suggests that such a person *is* protected by the Act's provisions, and our analysis of the law regarding repeals by implication suggests that no implied repeal occurred in that respect either. (Whatever the case, the result would be applicable to first-time drug possession offenders prosecuted under state statutes, as well.) However, we need not resolve this issue in order to decide the petitions for review before us. In both cases here, the pertinent findings had already been expunged before the BIA decisions were issued.

**29.** The INS relies heavily on *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983), *superseded by statute*, 18 U.S.C. § 921(a)(20), in which the Supreme Court held that convictions expunged under state law could still be used to penalize gun ownership by felons under federal law. The Court went on to find that the firearms restriction at issue in *Dickerson* was designed "to keep firearms out of the hands of presumptively risky people," and in fact applied even to those under indictment prior to any finding of guilt. *Id.* at 112 n. 6, 103 S.Ct. 986. Congress superseded the Court's holding on this point by amending the federal gun

control statute so that a conviction expunged under state law could not be considered a conviction under federal law for purposes of the federal gun control laws. *United States v. Brebner*, 951 F.2d 1017, 1021 (9th Cir.1991). However, *Dickerson* may remain good law for the proposition that, in general, the question of what counts as a conviction for purposes of a federal law remains a question of federal law. *See United States v. Sherbondy*, 865 F.2d 996, 1005 (9th Cir.1988).

*Dickerson* does not support the INS's position for three reasons. First, there is no discussion of the Federal First Offender Act in *Dickerson*, and the petitioner in that case would not have qualified for relief under the Act, as his crime did not involve narcotics. 400 U.S. at 107, 91 S.Ct. 210. Second, as the Court explained, "the terms 'convicted' and 'conviction' do not have the same meaning in every federal statute. In some statutes those terms specifically are made to apply to one whose guilty plea has been accepted.... In other federal statutes, however, the term 'convicted' is clearly limited to persons against whom a formal judgment has been entered." *Id.* at 112 n. 6, 91 S.Ct. 210. Thus, *Dickerson* supports the proposition that we must determine the meaning of "conviction" under the new immigration law by looking to the normal principles of statutory construction, not by reference to the federal gun control laws. Third, the Court in *Dickerson* held only that *state* rehabilitative laws could not displace the federal definition of a conviction for purposes of the gun laws, because the latter was a question of *federal* law. Here, both statutes at issue are federal.

viction subsequently overturned on the merits (either because of a finding of insufficient evidence or because of a basic procedural inadequacy, such as a violation of the right to counsel), could serve as the basis for deportation.[30] Thus, the INS acknowledges that a court's subsequent treatment of a conviction, after it has been entered, may in some cases serve to prohibit its use for immigration purposes. If this is so, it appears evident that a federal statute barring deportation in cases in which a court has expunged a particular kind of conviction does not necessarily conflict with the new definition. Because the exception we imply eliminates any potential inconsistency in the two statutes, ordinary principles of statutory construction preclude us from finding an implied repeal of the earlier one, in whole or in part. There is simply no irreconcilable conflict between the statutes. Moreover, the INS's recognition that a reversed conviction is of no force or effect lends still further support to the view that the new definition was intended to establish *when* a conviction occurs, not whether or how it can be rendered without further legal consequence.

The INS attempts to limit the implications of its concession by arguing that while a conviction cannot be given effect for immigration purposes if it is reversed, it can be given effect if it is merely vacated or set aside. As we have noted, the new definition by its terms draws no such distinction. If the statute truly provided an exhaustive, all-inclusive, inflexible definition of conviction, such that no subsequent event could change its status, then a vacated conviction might support a deportation order. But that is clearly not what this statute does. As the INS concedes, some limiting construction of the new definition is required; such a limitation must necessarily be made by the judiciary. Because the limitation is required by virtue of the provisions of the statute itself, we do not simply create a statutory exception, but rather implement the Congressional intent implicit in the statute's terms.[31]

Further support for the view that Congress did not intend to bar any and all exceptions to the new definition's literal terms can be found in its failure to provide any indication in the immigration statute that the new law was intended to displace the Federal First Offender Act. Had Congress intended to partially repeal the Act by passing the new definition of conviction, it could easily have done so by express reference to the Act, or at the least by including a "notwithstanding any other law" provision with respect to the new definition. Such provisions are found else-

**30.** The INS's concession, while not extending to all reversals, is not limited to reversals that have to do with the defendant's guilt. The concession also covers reversals that occur because of a fundamental procedural defect, such as the absence of counsel, discrimination in jury selection, or a violation of the right to self-representation, even when the evidence of guilt is overwhelming. *See Neder v. United States,* 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). We see no basis in the statute for limiting in any manner the class of reversed convictions that the INS may not use as the basis for a deportation order.

**31.** At oral argument, INS counsel cited our decision in *Beltran–Leon v. INS,* 134 F.3d 1379 (9th Cir.1998), in support of the claim that we have already established the rule that guilt is sufficient, without more, to support a removal order. Of course, if that were true with respect to offenses covered by the Feder-

al First Offenders Act, then *Beltran–Leon* would be in conflict with *Garberding* and *Paredes.* The INS's interpretation of *Beltran–Leon* is far too broad. In that case we said only that a particular common law writ—the writ of audita querela—cannot be given effect for deportation purposes absent a defect in the underlying legal proceedings. *Id.* at 1380. We relied on *Doe v. INS,* 120 F.3d 200, 203 (9th Cir.1997), in which we held that for a writ of audita querela to issue, there must be a legal defect in the underlying conviction or sentence, which was absent in Beltran-Leon's case. Neither Petitioner here has sought the benefit of the writ of audita querela; instead both rely on state rehabilitation statutes. In addition, we note that Beltran–Leon was convicted of the *sale* of cocaine, and therefore could not have received relief under the Federal First Offender Act.

where in the new immigration statute. *See, e.g.,* 8 U.S.C. § 1252. We assume that Congress was aware of the Act and the line of case law related to it when the new definition was enacted. *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) (stating that Congress is presumed to be aware of administrative and judicial interpretations). Accordingly, its failure to mention the Act, directly or indirectly, provides a final reason that we are compelled to conclude that Congress did not intend its repeal.

### D. Avoiding the First Offender Act Issue

The INS argues that we should resolve this case without deciding whether the First Offender Act has been repealed. In support of this argument, it contends that the BIA did not actually decide that the Act was repealed, but only determined that state expungement laws that are counterparts to the Act are no longer to be given effect for immigration purposes. We acknowledge, in fairness to counsel for the INS, that the BIA's decision is far from a model of clarity. In fact, it is extremely difficult to follow its reasoning. However, two considerations lead us to the firm conclusion that the BIA did decide that the Act was repealed.[32]

First, the Board stated that Congress deliberately did not codify an exception for first offenders in the new definition, despite its awareness of the Act. *Roldan,* 1999 BIA Lexis at *37–41. Second, the Board noted that Congress had made an exception to the rule that drug convictions result in deportation—for certain marijuana offenses—and stated that Congress could have made a similar exception for first-time simple drug possession offenses had it chosen to do so. *Id.* These statements make it clear that, whereas the

Board accepted the existence of certain exceptions specified in other parts of the immigration statute, it concluded that the exception for first-time drug possession offenses specified in the Federal First Offender Act did not survive the enactment of the new definition.

In any event, even if we were incorrect, and the BIA did in fact decide that expungements under state law are no longer to be given effect without deciding whether the provisions of the Federal First Offender Act were partially repealed by implication, it would still be necessary to decide whether the Act was repealed before the BIA decision could be upheld. Our decisions in *Garberding* and *Paredes* establish that aliens may not be treated differently based on the "mere fortuity" that they happen to have been prosecuted under state rather than federal law, or under different state laws, as there is no rational basis for distinguishing among the affected groups. *Paredes,* 36 F.3d at 811–12; *Garberding,* 30 F.3d at 1191. Here, both petitioners could have been prosecuted under the Federal First Offender Act and their offenses have already been expunged under state law. Thus, if the Act has not been repealed, they cannot be deported for those offenses. *Id.* See also Section VI, *infra.*

### E. *Chevron* Deference

▮▮▮▮ Finally, the INS argues that we should adopt the BIA's construction of the relevant statutes even if we disagree with it, placing great weight on the need for *Chevron* deference. *Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Chevron* holds that an agency's interpretation of a statute must be accorded deference where Congress has left a gap for it

---

32. We note that at oral argument, INS counsel apparently recognized the weakness in her interpretation of the BIA's decision, and argued on the merits that the new definition of "conviction" in the immigration statute repeals, by implication, the Federal First Offender Act. Further support for our reading of

the BIA's decision comes from Board Member Rosenberg, who dissented on the ground that the new definition did not repeal the Act, and advanced an argument almost identical to that which we set forth here. Apparently, Board Member Rosenberg read the BIA's decision as we do.

to fill or where it makes a reasonable interpretation of a provision that is ambiguous or uncertain. *Chevron,* 467 U.S. at 844, 104 S.Ct. 2778; *INS v. Aguirre–Aguirre,* 526 U.S. 415, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999). *Chevron* deference is predicated on the assumption that a statute's ambiguity constitutes an "implicit delegation" to the agency to interpret the statute. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,* —— U.S. ——, 120 S.Ct. 1291, 1314, 146 L.Ed.2d 121 (2000).

■ Under *Chevron,* we are first required to analyze the law applying normal principles of statutory construction, and then to defer to the agency if, after performing that analysis, we conclude that the statute is ambiguous or uncertain. 467 U.S. at 843 n. 9, 104 S.Ct. 2778; *INS v. Cardoza–Fonseca,* 480 U.S. 421, 446, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *Yang v. INS,* 79 F.3d 932, 935 (9th Cir.1996). In this case, as we have explained, *supra,* application of the normal principles of statutory construction dictate a clear and unequivocal answer to the issue before us: the Federal First Offender Act was not repealed by implication, in whole or in part. *See National Credit Union Admin. v. First Nat'l Bank & Trust Co.,* 522 U.S. 479, 501–02, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998) (finding the statute unambiguous after applying traditional canons of statutory construction). Accordingly, the statute is not ambiguous or uncertain and there is no occasion to apply *Chevron'*s deference rule. *See Gorbach v. Reno,* 219 F.3d 1087, 1093–94 (9th Cir.2000)(en banc); *Id.* at 1099–1100 (Thomas J. concurring).

### V.

Finally, the INS argues that even if Congress did not repeal the Federal First Offender Act, the BIA was nonetheless free to abandon its rule, adopted in *Manrique,* which provides that aliens whose offenses are expunged under state statutes affording relief similar to that provided by the Act may not be deported because of those offenses. The INS asserts that, even if it is still required to refrain from deporting persons because of offenses expunged under the First Offender Act, the BIA's decision that persons may not be deported for identical offenses expunged under state statutes was simply a policy choice, and that any such determination must be left entirely to the discretion of the agency.

■ We have already rejected this argument, *supra,* and we will not repeat our analysis in detail here. Suffice it to say that the BIA is not free to adopt any policy it chooses with respect to state rehabilitative laws, regardless of its arbitrariness or lack of constitutionality. Our decisions in *Garberding* and *Paredes* require, as a matter of constitutional equal protection, that the benefits of the Act be extended to aliens whose offenses are expunged under state rehabilitative laws, provided that they would have been eligible for relief under the Act had their offenses been prosecuted as federal crimes. *Paredes,* 36 F.3d at 811–12; *Garberding,* 30 F.3d at 1191. As there is no rational basis for a federal statute that treats persons adjudged guilty of a drug offense under state law more harshly than persons adjudged guilty of the identical offense under federal law, the petitioners may not be deported for their first-time simple drug possession offenses.

### CONCLUSION

We hold that the new definition of "conviction" for immigration purposes does not repeal either the Federal First Offender Act or the rule that no alien may be deported based on an offense that could have been tried under the Act, but is instead prosecuted under state law, where the findings are expunged pursuant to a state rehabilitative statute. Both Lujan's and Roldan's petitions involve first-time drug offenses for simple possession, and both offenses were expunged under state law.

Therefore, the petitioners may not be deported on account of those offenses.

For the foregoing reasons, the petitions for review are GRANTED, and petitioners' removal orders are hereby VACATED.