**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JESUS ROMERO, a.k.a. Jesus
Romero-Tapia,

*Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,

*Respondent.*

No. 05-71029

Agency No.
A070-715-058

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 10, 2008—Pasadena, California

Filed June 8, 2009

Before: Harry Pregerson, Dorothy W. Nelson and
David R. Thompson, Circuit Judges.

Opinion by Judge Pregerson

---

**COUNSEL**

William Baker, Moreno & Associates, Chula Vista, California, for the petitioner.

Peter D. Keisler, William C. Peachey, Lyle D. Jentzer, Washington, D.C., for the respondent.

---

**OPINION**

PREGERSON, Circuit Judge:

Jesus Romero ("Romero") petitions for review of the Board of Immigration Appeals's ("BIA") order denying his motion to reopen and ordering him removed from the United States. In removal proceedings, Romero applied for cancellation of removal under 8 U.S.C. § 1229b(b). To qualify for that form of relief, Romero was required to show that he was a person

of "good moral character." 8 U.S.C. § 1229b(b)(1)(B). The BIA affirmed the finding of the Immigration Judge ("IJ") that Romero's guilty plea to a first-time, simple possession drug offense, which was deferred for eighteen months and then dismissed under a state rehabilitative statute, statutorily barred Romero from proving good moral character. Because the BIA erred by finding Romero statutorily barred from showing good moral character on the basis of his guilty plea which was later expunged, we grant the petition and remand for further proceedings consistent with this opinion.

## I.  FACTS AND PROCEDURAL HISTORY

Romero was born in Mexico in July 1977. In February 1988, when Romero was ten years old, he accompanied his mother into the United States. At that time, his mother possessed a valid Border Crossing Card, which permitted them to remain in the United States for no more than seventy-two hours. Romero has continuously resided in this country since his entry. Both Romero's parents are now lawful permanent residents.

In 1998, when Romero was twenty years old, he was arrested for possession of a controlled substance in violation of California Health and Safety Code § 11377(a). Romero was allowed to participate in California's drug rehabilitation program under California Penal Code § 1000.

Pursuant to the rehabilitation program, in April 1998, Romero pled guilty to one count of simple possession of a controlled substance, and the judge deferred entry of judgment for eighteen months. When a defendant successfully completes the deferred judgment program, the criminal charges against him or her are dismissed. Cal. Penal Code § 1000.3 (stating that "[i]f the defendant has performed satisfactorily during the period in which deferred entry of judgment was granted, at the end of that period, the criminal charge or charges shall be dismissed."). Furthermore, follow-

ing successful completion of the program, California Penal Code section 1000.1(d) provides that the "plea of guilty . . . shall not constitute a conviction for any purpose . . . ."

If Romero successfully completed the program, the criminal charge against him was scheduled to be dismissed in October 1999. Following Romero's appearance in state court on the drug charge, however, immigration officials[1] detained Romero and initiated removal proceedings against him, charging him as being removable for overstaying his visa.[2] In Immigration Court, Romero admitted the allegations and conceded his removability, and in October 1998, he filed an application for cancellation of removal pursuant to 8 U.S.C. § 1229b(b).

To be eligible for cancellation of removal under section 1229b(b), Romero needed to satisfy four requirements: (1) that he had been physically present in the United States for a continuous period of not less than ten years immediately preceding the date of application, (2) that he had been a person of good moral character during that period, (3) that he had not

---

[1]Immigration proceedings were initiated against Romero by the Immigration and Naturalization Service ("INS"). Effective March 1, 2003, the INS ceased to exist and its functions were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).

[2]Initially, immigration officials charged Romero as having entered the United States without inspection, which would have made him inadmissible at the time of his entry under 8 U.S.C. § 1182(a)(6)(A)(i), and therefore removable. 8 U.S.C. § 1227(a)(1)(A). Romero contested that charge because he entered the United States at a port of entry with his mother who had a valid Border Crossing Card, and therefore he had been inspected. Immigration officials later withdrew the charge of entry without inspection and instead charged Romero with being removable for overstaying the lawful time permitted by his visa under 8 U.S.C. § 1227(a)(1)(B) and for failing to comply with his nonimmigrant status under 8 U.S.C. § 1227(a)(1)(C)(i). Romero conceded that he was removable under those charges.

been convicted of an offense under § 1182(a)(2)[3] and certain other offenses not relevant here, and (4) that removal would cause "exceptional and extremely unusual hardship" to Romero's lawful permanent resident parents. 8 U.S.C. § 1229b(b).

In considering whether Romero was eligible for cancellation of removal, the IJ considered two *potential* effects concerning Romero's controlled substance offense, which had not yet been expunged. To satisfy the second eligibility requirement for cancellation of removal, Romero had to show that he was a person of good moral character for a period of ten years preceding the date of his application for cancellation. But a person cannot be considered one of good moral character if he or she was "convicted of, or . . . *admits* having committed, or . . . *admits* committing acts which constitute the essential elements of" an offense under 8 U.S.C. § 1182(a)(2)(A) or (B). 8 U.S.C. § 1101(f)(3) (emphases added). The IJ determined that if Romero's state court guilty plea were classified as an "admission" that he had committed a controlled substance offense, Romero would be statutorily ineligible for cancellation of removal because under 1229b(b)(1)(B) he would not be considered to be a person of good moral character.

On the other hand, if Romero's controlled substance offense were classified as a "conviction," he could not satisfy the third eligibility requirement for cancellation of removal because he would be a person convicted of a controlled substance offense under 8 U.SC. § 1182(a)(2)(A)(i)(II). 8 U.S.C. § 1229b(b). The IJ held hearings to determine whether Romero's charged controlled substance offense should be treated as a "conviction" under Congress's 1996 definition of that term under 8 U.S.C. § 1101(a)(48)(A)[4], even though the state court deferred judgment for eighteen months.

---

[3]Under 8 U.S.C. § 1182(a)(2)(A)(i)(II), a person "convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of" a controlled substance offense is inadmissible.

[4]Under 8 U.S.C. § 1101(a)(48)(A),

> The term "conviction" means, with respect to an alien, a for-

In February 1999, the IJ issued her decision. The IJ found that Romero could not show good moral character, the second requirement for cancellation of removal under 8 U.S.C. § 1229b(b). The IJ found that Romero admitted he had committed a controlled substance offense by pleading guilty in state court. Accordingly, the IJ found that Romero could not be considered a person of good moral character under 8 U.S.C. § 1101(f)(3), even though entry of judgment on the controlled substance offense had not been entered but deferred by the state court.

The IJ found that Romero's drug offense failed to meet Congress's new 1996 definition of a "conviction" as defined by 8 U.S.C. § 1101(a)(48)(A). Specifically, the new definition of "conviction" requires that a judge order "some form of punishment, penalty, or restraint on the alien's liberty to be imposed." 8 U.S.C. § 1101(a)(48)(A)(ii). The IJ found that the requirement that Romero enroll in a deferred judgment/ AIDS education program for three months was not a "form of punishment, penalty, or restraint on liberty to be imposed" within the meaning of section 1101(a)(48)(A). Accordingly, the IJ found that Romero satisfied the third requirement for eligibility for cancellation of removal because he was not "convicted" of a controlled substance offense under 8 U.S.C. § 1182. But because Romero could not satisfy section 1229b(b)'s second eligibility requirement by showing good moral character, the IJ ruled that Romero was not statutorily eligible for cancellation of removal and ordered him removed.

---

mal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—

(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

(ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

In June 1999, Romero timely appealed to the BIA. While Romero's appeal was pending before the BIA, we issued our opinion in *Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000). In *Lujan-Armendariz*, we held that a first-time, simple possession drug conviction expunged under the Federal First Offender Act ("FFOA") could not be used for immigration purposes, nor could a state conviction expunged under a state rehabilitative statute be used for immigration purposes, where the defendant in the state action would have been eligible for relief under the FFOA. 222 F.3d at 749.

In February 2003, the BIA dismissed Romero's appeal. The BIA concluded that the IJ's determination that Romero's state court guilty plea was not a "conviction" was in accordance with Ninth Circuit law as articulated in *Lujan-Armendariz*. Accordingly, Romero satisfied the third cancellation of removal requirement, because he was not "convicted" of a controlled substance offense. 8 U.S.C. 1229b(b)(C).

The BIA agreed with the IJ, however, that Romero's guilty plea constituted an "admission" of a violation of a law relating to a controlled substance which made him unable to demonstrate that he was a person of good moral character under 8 U.S.C. 1101(f)(3). The BIA agreed with the IJ that Romero was statutorily ineligible for cancellation of removal and dismissed the appeal.

In April 2003, Romero timely filed a motion to reopen before the BIA. Romero submitted new evidence with the motion, showing that on April 8, 2003, nunc pro tunc to October 7, 1999, the state court set aside Romero's guilty plea and dismissed the charge against him after he successfully completed the drug rehabilitation program. Romero argued that *Lujan-Armendariz* controverted the BIA's finding that Romero's guilty plea constituted an "admission" rendering him ineligible for cancellation of removal. Because the charge against Romero had been dismissed, Romero argued that under *Lujan-Armendariz*, the offense could not be used

against him for any purpose. With the motion, Romero submitted copies of the relevant state court documents and requested that the case be remanded to the IJ for consideration of the new evidence and in light of *Lujan-Armendariz*. The Government opposed the motion.

In August 2003 the BIA denied Romero's motion to reopen. The BIA found that while the court documents relating to Romero's conviction were not previously available to Romero, "their contents [were] not sufficiently material to warrant the reopening and remand of [Romero's] case." The BIA explained that its earlier dismissal of Romero's appeal was not based on Romero's controlled substance *conviction*, but rather on Romero's *guilty plea*. The BIA again held that Romero could not show good moral character because Romero's guilty plea constituted an "admission" that he violated a law relating to a controlled substance offense. Because the BIA found that the motion to reopen contained no new facts material to the good moral character determination, it denied Romero's motion.

In September 2003, Romero timely petitioned our court for review. In April 2004, the Government filed an unopposed motion to remand Romero's case to the BIA so that the BIA could consider whether Romero's "participation and completion of California's deferred-adjudication program could be viewed as an admission (as opposed to a conviction for) his violation of any law . . . relating to a controlled substance" such that Romero could not show good moral character and demonstrate eligibility for cancellation of removal. Specifically, the Government moved this court to remand the case in light of our decisions in *Dillingham v. INS*, 267 F.3d 996, 1003 (9th Cir. 2001), *Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000), *Paredes-Urrestarazu v. INS*, 36 F.3d 801, 811 (9th Cir. 1994), and *Ramirez-Castro v. INS*, 287 F.3d 1172, 1174-75 (9th Cir. 2002). Our court granted the motion in a brief order and remanded to the BIA "so that it may consider

the good moral character issue in light of" the same cases cited by the Government in its motion.

In January 2005, the BIA concurred in its August 2003 dismissal of Romero's motion to reopen. The BIA observed that our court had not provided any further guidance on the merits of the case, that the record did not shed any further light on the case, and that neither Romero nor the Government had filed a brief on remand.

Assuming that Romero was arguing that the agency erred in finding that Romero's drug possession offense could be considered in determining Romero's good moral character, the BIA cited our decisions in *United States v. Hovsepian*, 359 F.3d 1144, 1158 (9th Cir. 2004) (en banc) and *Ramirez-Castro v. INS*, 287 F.3d 1172, 1174-75 (9th Cir. 2002), as supporting its holding that "expunged convictions, such as that of [Romero], can and should be used in assessing an alien's good moral character because the facts underlying expunged convictions are relevant in the context of good moral character determinations."

The BIA again found that Romero was ineligible for cancellation of removal because he could not establish good moral character, and ordered Romero removed. Romero timely petitioned for review.

## II.  JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 8 U.S.C. § 1252. We review the denial of a motion to reopen for abuse of discretion. *Perez v. Mukasey*, 516 F.3d 770, 773 (9th Cir. 2008). The agency's decision is only reversed if it is arbitrary, irrational, or contrary to law. *Singh v. INS*, 295 F.3d 1037, 1039 (9th Cir. 2002) (quoting *Ahwazi v. INS*, 751 F.2d 1120, 1122 (9th Cir. 1985)). The BIA's conclusions of law are reviewed de novo. *Ramirez-Castro v. INS*, 287 F.3d 1172, 1174 (9th Cir. 2002).

Where as here the BIA conducted a de novo review of the IJ's decision, we review only the decision of the BIA. *Dillingham v. INS*, 267 F.3d 996, 1004 (9th Cir. 2001).

## III.  DISCUSSION

### A.  Romero Was Not Statutorily Ineligible to be Considered of Good Moral Character.

**[1]** Following *Lujan-Armendariz*, in cases involving first-time simple possession drug convictions which could have been tried under the FFOA but are instead prosecuted and expunged under state law, "the expungement of the petitioner's conviction under state law eliminates the immigration consequences of the offense." *Ramirez-Castro*, 287 F.3d at 1174 (discussing *Lujan-Armendariz*). It is undisputed that Romero's conviction has been expunged pursuant to California law and that, had Romero been prosecuted in federal court, he would have been eligible for expungement of his drug offense under the FFOA. Accordingly, the expungement of Romero's conviction "eliminates the immigration consequences of the offense." *Id.*

The Government supports the BIA's holding that while Romero's expunged conviction cannot serve as a "conviction" for immigration purposes, Romero's guilty plea nevertheless constitutes an admission that Romero committed a controlled substance offense which bars a finding of good moral character under 8 U.S.C. § 1101(f)(3).

**[2]** We disagree. As we stated in *Lujan-Armendariz*, under the FFOA, "the finding of guilt is expunged and *no legal consequences* may be imposed as a result of the defendant's having committed the offense. The [FFOA's] ameliorative provisions apply for *all* purposes." *Lujan-Armendariz*, 222 F.3d at 735 (first emphasis added). To allow the guilty plea which preceded the expungement of the offense to constitute an "admission" of a controlled substance offense would attach

a legal consequence to the expunged offense, contrary to our reasoning in *Lujan-Armendariz*.[5]

Our decision in *Dillingham* also supports this conclusion. 267 F.3d 996. In *Dillingham*, the petitioner was convicted in Great Britain of a first-time, simple drug possession charge. *Id.* at 1001. The conviction was expunged in Great Britain. *Id.* Had the petitioner's offense occurred in the United States, he would have qualified for expungement under the FFOA. *Id.* at 1011. The petitioner later married a United States citizen and sought to adjust his status based on that marriage. *Id.* at 1001. His application was denied because the immigration authorities found that his earlier drug conviction rendered him inadmissible and ineligible for adjustment of status. *Id.* The INS then sought to deport him for having overstayed his visa and also on the basis of his expunged controlled substance offense. *Id.* at 1002.

Under the version of 8 U.S.C. § 1255(a) in force at that time, the petitioner in *Dillingham* had to be eligible to receive an immigrant visa in order to adjust his status to that of a lawful permanent resident. 8 U.S.C. § 1255(a) (1988) (current version at 8 U.S.C. § 1255(a) (2006)). Under the version of

---

[5]The FFOA was adopted in 1970 and is a rehabilitation statute "that applies exclusively to first-time drug offenders who are guilty only of simple possession." *Lujan-Armendariz*, 222 F.3d at 735. Under the FFOA, if a person does not violate a probationary period set by the court, the court may dismiss the proceedings against the person without entering a judgment of conviction. 18 U.S.C. § 3607(a); *see also Ramirez-Altamirano v. Holder*, 563 F.3d 800, 805-08 (9th Cir. 2009) (discussing relief provided by the FFOA).

In the case of a defendant who was under the age of twenty-one at the time of the offense, an expungement order restores the person to their status before the arrest or criminal proceedings took place. 18 U.S.C. § 3607(c). After the court enters the expungement order, the person cannot be found guilty of perjury or false swearing for failing to acknowledge or recite the arrest "in response to an inquiry made of him for *any* purpose." *Id.* (emphasis added).

§ 1182(a) in force at that time, however, a person was ineligible to receive a visa if he or she was "convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of" a controlled substance offense. 8 U.S.C. § 1182(a)(2)(A)(II) (1988) (current version at 8 U.S.C. § 1182(a)(2)(a)(II) (2006)).

Although *Dillingham* was decided on constitutional equal protection grounds, this court specifically rejected the Government's argument that the petitioner's guilty plea constituted an "admission" that he committed a controlled substance offense, rendering him ineligible for a visa under 8 U.S.C. § 1182(a)(2)(A)(i)(II), and therefore ineligible for adjustment of status under 8 U.S.C. § 1255(a). 267 F.3d at 1003 (stating that "[w]e believe that under the terms of [§ 1182(a)(2)(A)(i)(II)], . . . the fact that [the petitioner] 'admitted' his prior offense is of no greater consequence than the conviction itself."). Furthermore, after finding that the petitioner in *Dillingham* was not "convicted" of a controlled substance offense, we held that he was statutorily eligible to seek adjustment of status, and remanded the case to the BIA for a determination on his adjustment of status application. *Id.* at 1011.

**[3]** Had the petitioner's guilty plea in *Dillingham* constituted an "admission" despite his offense not being a "conviction" for immigration purposes, there would not have been any need for such a remand, because the petitioner would have been statutorily ineligible for the relief he sought. In other words, implicit in *Dillingham* is the recognition that the petitioner's guilty plea in connection with his expunged, first-time simple possession offense could not serve as an "admission" of a controlled substance offense once that offense was expunged.

**B. The Cases Cited to by the BIA are Inapposite.**

The BIA also cited to our holdings in *Ramirez-Castro v. INS*, 287 F.3d 1172 (9th Cir. 2002), and *United States v.*

*Hovsepian*, 359 F.3d 1144 (9th Cir. 2004) (en banc), to support its position. The BIA reasoned that in those cases we "concluded that expunged convictions, such as that of [Romero], can and should be used in assessing an alien's good moral character because the facts underlying expunged convictions are relevant in the context of good moral determinations." Neither of those cases supports the BIA's contention. The BIA failed to draw a crucial distinction between cases in which petitioners could have been eligible for relief under the FFOA, thus falling within the purview of *Lujan-Armendariz*, and cases in which the petitioners would not be eligible for relief under the FFOA, and whose expunged convictions may still carry immigration consequences.

The petitioner in *Ramirez-Castro* was convicted of carrying a concealed weapon in violation of California Penal Code § 12025(b) (1991). 287 F.3d at 1173. The Government sought to deport the petitioner under 8 U.S.C. § 1227(a)(2)(C) based on that concealed weapon conviction. *Id.* at 1174 n.3. The conviction was expunged pursuant to California Penal Code § 1203.4. *Id.* at 1173. The petitioner argued that because of the expungement, the firearms offense did not qualify as a "conviction" and that he was therefore not deportable for having committed any such offense. *Id.* at 1174-75.

The BIA's reliance on *Ramirez-Castro* is misplaced. We carefully distinguished the offense committed by the petitioner in *Ramirez-Castro* for carrying a concealed weapon from the first-time simple possession drug offenses which fall within the purview of *Lujan-Armendariz*. *Id.* at 1175 (observing that "Petitioner's firearms conviction is not within the scope of the Federal First Offender Act"). We dismissed the petition in *Ramirez-Castro*, concluding that despite the expungement of the petitioner's offense under California law, he stood convicted of the firearms offense for immigration purposes. *Id.* at 1175-76.

Nor does our decision in *Hovsepian* provide support for the BIA's decision. *Hovsepian* also dealt with persons not eligible

for relief under the FFOA. *United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004) (en banc). As is relevant here, in *Hovsepian*, the petitioners were convicted of criminal charges relating to a plot to bomb the offices of the Honorary Turkish Consul General in Pennsylvania. *Id.* at 1147-48. While initially they were both sentenced as adults, they were later resentenced under the Federal Youth Corrections Act, 18 U.S.C. § 5021 (repealed 1984). *Id.* at 1148. The district court then ordered their convictions set aside under the Federal Youth Corrections Act, and further ordered their criminal records sealed. *Id.* at 1150-51. Many years after the convictions, the appellants sought to become United States citizens. *Id.* at 1151. The INS then sought to use the facts underlying one of the petitioners' expunged convictions to show that he was not a person of good moral character, and thus unable to become a citizen. *Id.* at 1159; *see* 8 U.S.C. § 1427(a)(3) (requiring an application for United States citizen to show that he or she is a person of good moral character).

Sitting en banc, we held that:

> [E]ven if a conviction is set aside under [the Federal Youth Corrections Act], the facts underlying that conviction remain relevant in determining whether an applicant for naturalization can satisfy the requirement that he or she is of "good moral character."

*Id.* at 1159. In so holding, however, we explicitly distinguished the type of convictions in *Hovsepian* from first-time simple possession drug offenses. *Id.* at 1159 n.11 (citing *Ramirez-Castro*, 287 F.3d at 1174) (noting that "an expunged conviction is not nullified for purposes of the immigration laws *unless it falls within the narrow exception established for cases involving first-time simple possession of narcotics*." (emphasis added)).

The Government argues that *Lujan-Armendariz* is inapposite here because that opinion focuses on the use of an

expunged conviction as a "conviction" under immigration law, and does not address whether Romero's guilty plea was an "admission" of acts constituting a drug offense.

**[4]** Use of Romero's expunged offense as a "conviction" or as an "admission" would have the effect of imposing a legal consequence on him "as a result of [his] . . . having committed the offense." *Lujan-Armendariz*, 222 F.3d at 735. Our case law does not support that result. Romero would have been eligible for relief under the FFOA had his offense been prosecuted under federal law. His offense has now been expunged and the charge against him dismissed. The BIA erred when it found that Ninth Circuit case law allowed Romero's expunged conviction to serve as an absolute bar to his proving his good moral character.

## IV.   CONCLUSION

**[5]** We hold that the facts underlying a conviction that would have been eligible for relief under the FFOA, but was expunged under a state rehabilitative statute, cannot serve as an "admission" of a drug offense, statutorily barring a finding of good moral character under 8 U.S.C. § 1101(f)(3). Under our case law, convictions are nullified for the purposes of immigration law if they were expunged under the FFOA, or if they were expunged under a state rehabilitative law but could have been tried under the FFOA. The BIA therefore erred when it found Romero statutorily ineligible for cancellation of removal because he could not establish good moral character.

Accordingly, we grant the petition for review and remand for further administrative proceedings consistent with this opinion.

The petition is **GRANTED.**