**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WINDELL JAVILLONAR RETUTA,

*Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney
General,

*Respondent.*

No. 04-74855
Agency No.
A43-380-112

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 6, 2009—Pasadena, California

Filed January 7, 2010

Before: William A. Fletcher and Richard R. Clifton,
Circuit Judges, and Louis H. Pollak,* District Judge.

Opinion by Judge Louis H. Pollak

*The Honorable Louis H. Pollak, Senior United States District Judge
for the Eastern District of Pennsylvania, sitting by designation.

497

## COUNSEL

James Todd Bennett, El Cerrito, California, for the petitioner.

Bryan Stuart Beier, US DEPARTMENT OF JUSTICE, Washington, D.C., for the respondent.

## OPINION

POLLAK, District Judge:

Windell Javillonar Retuta petitions for review of a decision of the Board of Immigration Appeals (BIA) affirming the Immigration Judge's (IJ) order that Retuta was removable under 8 U.S.C. § 1227(a)(2)(B)(i) because he had been convicted of a controlled substance violation.

In addressing Retuta's petition, we consider two issues relating to the government proving a "conviction" to establish an alien's removability. First, we determine whether the minute order that the government relied on, which contained acronyms, is sufficiently clear evidence of a criminal conviction in removal proceedings, in light of our recent *en banc* decision in *United States v. Snellenberger*, 548 F.3d 699 (9th Cir. 2008), that found minute orders sufficient evidence of a conviction during federal sentencing proceedings. Second, turning to the substance of the conviction at issue, we must determine whether the definition of a "conviction" in 8 U.S.C. § 1101(a)(48) includes a judgment that withholds an adjudication of guilt and imposes a sanction other than incarceration—namely a small fine—and simultaneously suspends or stays execution of that sanction. Section 1101(a)(48) defines "conviction" to include proceedings where a formal judgment of guilt has been withheld provided that (1) there has been a finding of guilt or admission of sufficient facts for a finding of guilt, and (2) "some form of punishment, penalty, or restraint on the alien's liberty" has been imposed. 8 U.S.C. § 1101(a)(48)(A). The definition clarifies that suspended periods of incarceration must be considered, *id.* § 1101(a)(48)(B), but does not address whether immigration consequences attach to the suspension of non-incarceratory punishments.

I.   Background

Windell Javillonar Retuta is a twenty-seven-year-old citizen and national of the Philippines who was admitted into the United States as a lawful permanent resident alien on June 5, 1992. The Department of Homeland Security (DHS) served Retuta with a Notice to Appear (NTA) on December 15, 2003, alleging multiple grounds for removal. On January 7, 2004, DHS amended the NTA to bring the total allegations of prior convictions sufficient for removal to four. DHS alleged that Retuta was convicted of (1) buying stolen property, in violation of § 496(a) of the California Penal Code, (2) possession of a controlled substance, methamphetamine, in violation

of § 11377(a) of the California Health and Safety Code, (3) use of a controlled substance, in violation of § 11550 of the California Health and Safety Code, and (4) domestic battery, in violation of § 242 and § 243(e) of the California Penal Code.

During removal proceedings before the IJ, the Government chose to proceed only on the controlled substances violations and rejected the opportunity to delay the proceedings in order to submit documentation that would support the other charges. The IJ addressed only the alleged conviction on March 11, 2002 for (1) possession of a controlled substance, methamphetamine, and (2) use of a controlled substance. Retuta argued that the minute order offered to prove this conviction was insufficient because the order was incomprehensible due to unexplained acronyms. The IJ determined that the minute order and criminal complaint sufficiently proved the fact of Retuta's conviction and, thus, DHS had met its burden of proving Retuta removable by clear and convincing evidence. The IJ further stated that because Retuta had previously been granted cancellation of removal and because the conviction at issue occurred after the cancellation of removal, he was not eligible for a second cancellation of removal. Based on his new controlled substance violations, Retuta was ordered removed to the Philippines.

On August 26, 2004, Retuta filed an appeal with the Board of Immigration Appeals. Retuta argued to the BIA that: (1) the minute order was insufficient to sustain the charge of removal; (2) the controlled substances violations only resulted in a stayed fine that did not rise to the level of a "punishment, penalty or restraint on [his] liberty" under 8 U.S.C. § 1101(a)(48)(A)(ii); and (3) Retuta's conviction for possession and use of a controlled substance might be entitled to expungement under a state equivalent to the Federal First Offender Act (FFOA), 18 U.S.C § 3607.

The BIA dismissed the appeal. The BIA ruled that the minute order and criminal complaint established that Retuta had

pled guilty to possession of methamphetamine, a controlled substance. The BIA did not refer to the additional count contained in the minute order of use of a controlled substance. The BIA also ruled that a fine, even if suspended, is a "punishment" within the meaning of 8 U.S.C. § 1101(a)(48)(A)(ii). Lastly, it found that Retuta's prior drug convictions rendered him ineligible for relief from removal under the provisions of the FFOA.

In making its determination that Retuta pled guilty to possession of methamphetamine, the BIA examined the minute order, which contains numerous abbreviations without any key to decode them. The minute order is a preprinted form with various boxes and blanks. The order has the boxes checked for "Atty Present," "~~COP~~ PLEADS," "GUILTY," "DEJ Granted," and "FINE STAYED." "DRF" is circled with $100 written next to it. The BIA stated that the minute order, though perhaps "confusing," was "not incomprehensible" and was sufficiently informative to establish that Retuta had pled guilty to possession of a controlled substance. The BIA found the document proved that Retuta pled guilty to possession of a controlled substance with a deferred entry of judgment and a suspended fine.

To find that a stayed fine constituted a "conviction" within the meaning of section 1101(a)(48), the BIA concluded that "[t]he imposition of a fine, regardless of if it is stayed, constitutes some form of punishment." To support this position, the BIA cited its prior decision in *Matter of Ozkok*, 19 I. & N. Dec. 546 (BIA 1988), for the proposition that a "suspended fine [is] sufficient to find the existence of a conviction."

The BIA also decided that Retuta could not take advantage of the FFOA, which allows a single conviction for possession of a controlled substance to be expunged, thus not rendering an immigrant removable. In determining whether Retuta's conviction qualified under the FFOA, the BIA relied upon a computer printout of Retuta's criminal history, commonly

referred to as a rap sheet. The rap sheet shows other convictions for possession of a controlled substance.

## II.  Jurisdiction and Standard of Review

This court has jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a). A court of appeals reviews questions of law *de novo*. *Chuyon Yon Hong v. Mukasey*, 518 F.3d 1030, 1034 (9th Cir. 2008). Questions of law include "not only 'pure' issues of statutory interpretation, but also application of law to undisputed facts, sometimes referred to as mixed questions of law and fact." *Ramadan v. Gonzales*, 479 F.3d 646, 648 (9th Cir. 2007) (per curiam) (citations omitted). The government bears the burden of proving by clear, unequivocal, and convincing evidence that the alien is removable. *Ruiz-Vidal v. Gonzales*, 473 F.3d 1072, 1076 (9th Cir. 2007).

## III.  Discussion

### A.  Was the Minute Order Sufficient Proof of the Outcome of the State Court Proceedings?

Retuta argues that the minute order used to prove his 2002 conviction for possession of a controlled substance was insufficient to prove the fact of his conviction by the required clear, unequivocal, and convincing evidence standard because the minute order contains several unexplained acronyms. The BIA addressed this argument and noted that "[a]lthough the document may be confusing, it is not incomprehensible and it contains sufficient information to determine that the respondent pled guilty to possession of a controlled substance under section 11377(a) of the California Health and Safety Code." We find that the BIA did not err in its conclusion.

**[1]** First, the INA makes clear that "[o]fficial minutes of a court proceeding" are sufficient "proof of a criminal conviction." 8 U.S.C. § 1229a(c)(3)(B)(iv). Additionally, in *United*

*States v. Snellenberger*, 548 F.3d 699 (9th Cir. 2008) (*en banc*), this court recently addressed the analogous question of whether a California state court minute order sufficiently proved a conviction, resulting in a career offender sentencing enhancement. There, we held that the minute order described the conviction with sufficient reliability that it could be used for sentencing. *Id.* at 702.

[2] The minute order here does not present enough ambiguity to prevent us from applying *Snellenberger* in the context of proving a conviction in immigration proceedings. While the minute order would be clearer with an explanation of its acronyms, it contains standard terms that support a conclusion that Retuta was convicted of possession of a controlled substance.[1] The minute order has boxes checked for "PLEADS," "GUILTY," and "DEJ Granted." Under "Violation" the order states that "HS11377(A)" was Count Two. The record contains the criminal complaint, which lists possession of a controlled substance in violation of § 11377(a) of the California Health and Safety Code as Count Two. One does not need a definition of the terms used to conclude that Retuta pled guilty and received a deferred entry of judgment (DEJ) for violation of California laws relating to the possession of a controlled substance.

[3] Similarly, the minute order sufficiently states Retuta's sentence. The minute order lists "$100" after circling "DRF." Retuta argued that the minute order does not make clear whether the $100 listed was for a fine, fee, or civil restitution.[2]

---

[1] Because the BIA's opinion does not explicitly incorporate the IJ's determination that Retuta was also convicted of one count of use of a controlled substance, we do not address that determination.

[2] The government in a Rule 28(j) letter claimed that *Matter of Cabrera*, 24 I. & N. Dec. 459 (BIA 2008), rendered irrelevant whether the amount was for a fine, fee, or restitution, as all may be considered punitive by the BIA. In *Cabrera*, the BIA found that mandatory costs were a "punishment" or "penalty," and indicated restitution to be the same. *Id.* at 461-62. We need not decide whether we must give deference to BIA's decision in *Cabrera* that costs or restitution are sufficiently punitive to be a "punishment" or "penalty," as the minute order clearly states the amount involved to be a fine.

While that alone could be ambiguous, the order seven lines below states "FINE STAYED 5-31-02." Like any other record of a sentence, we must give the term "fine" its logical meaning, a monetary sanction. A judge preparing any judicial document, be it a minute order or a published opinion, would likely not feel the need to clarify the term "fine." Thus, we conclude that the minute order adequately proves that Retuta pled guilty and received a sentence of a stayed fine. However, the conclusion that the government adequately proved what occurred during the criminal proceedings of March 11, 2002 does not compel us to find Retuta can be removed. The minute order proves that Retuta pled guilty to violating California law, but it does not show, without more, that this violation resulted in a "conviction" under the Immigration and Nationality Act.

B. Does the Definition of "Conviction" in 8 U.S.C. § 1101(a)(48) Include Deferred Entry of Judgment Where the Sentence is a Stayed Fine?

For his second argument, Retuta challenges the BIA's conclusion that a deferred entry of judgment, where the only consequence is a stayed fine, constitutes a "conviction" as defined under the INA, 8 U.S.C. § 1101(a)(48). The BIA rejected Retuta's argument by relying on its own decision in *Matter of Ozkok*, 19 I. & N. Dec. 546 (BIA 1988), which preceded Congress's 1996 codification of a definition of "conviction."

[4] Congress amended Title 8 in the Illegal Immigrant Reform and Immigrant Responsibility Act of 1996 (IIRIRA) to define what characteristics a criminal judgment must have before it qualifies as a "conviction" under the INA. Section 1101(a)(48) provides:

(A) The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered

by a court or, if adjudication of guilt has been withheld, where—

> i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

> (B) Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part.

8 U.S.C. § 1101(a)(48). Thus, the government must show two things when a formal adjudication of guilt has been withheld: (1) a finding of guilt or sufficient facts to support such a finding, and (2) some punishment, penalty, or restraint on liberty (which includes suspended incarceratory sentences).

**[5]** Prior to the 1996 Amendment, the INA did not define the elements of a conviction. The issue was instead governed by the BIA's decision in *Matter of Ozkok*, which Congress, in passing IIRIRA in 1996, intended partially to adopt and partially to overrule. H.R. Rep. No. 104-828, at 224 (1996) (Conf. Rep.). The BIA in *Ozkok* had established a three-part-test for determining if there is a "conviction":

> (1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilty;

(2) the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community-based sanctions such as a rehabilitation program, a work-release or study-release program, revocation or suspension of a driver's license, deprivation of nonessential activities or privileges, or community service); and

(3) a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge.

*Matter of Ozkok*, 19 I. & N. Dec. 546, 551-52 (BIA 1988). The IIRIRA Amendment to the INA expanded on what categories of deferred adjudications can constitute convictions:

Without question, the new definition eliminated the distinction between the different types of deferred adjudication statutes set forth in the third prong of the Ozkok definition. It is clear that Congress intended the new definition to mean, generally, that a conviction occurs prior to the time the probationary period begins in cases processed under state deferred adjudication laws, regardless of whether the state statute requires further proceedings prior to the formal entry of a judgment of conviction in the event of a probation violation.

*Lujan-Armendariz v. I.N.S.*, 222 F.3d 728, 742 (9th Cir. 2000). In *Lujan-Armendariz*, we noted that "Congress adopted verbatim the first two sub-parts of the *Ozkok* definition." *Id.*

### 1. Is there Binding Agency Precedent On-Point, Requiring Our Deference?

**[6]** The BIA's opinion and the government on appeal both argue that this case must be resolved by deferring to the BIA's opinion in *Matter of Ozkok*. This court must give deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), to the "agency's construction of the statute [that] it administers." *Hernandez-Guadarrama v. Ashcroft*, 394 F.3d 674, 678 (9th Cir. 2005). However, in order to be entitled to *Chevron* deference, the agency's construction must have been issued in "binding agency precedent on-point (either in the form of a regulation or a published BIA case)." *Kyung Park v. Holder*, 572 F.3d 619, 623-24 (9th Cir. 2009) (internal quotations and citations omitted). Two factors require us to conclude that *Ozkok* is not "binding agency precedent on-point." First, Congress enacted the IIRIRA Amendment subsequent to *Ozkok*, so the language of *Ozkok* is no longer binding, at least insofar as it is not consistent with the text of the IIRIRA Amendment. Second, *Ozkok* did not address the particular situation present here— namely, whether a suspended fine is sufficient punishment to satisfy the definition of conviction. *Ozkok* addressed the imposition of probation and the actual enforcement of non-incarceratory penalties, but not the "imposition" of suspended non-incarceratory penalties. *See Ozkok*, 19 I. & N. Dec. at 551-553.

The government, in a Rule 28(j) letter of September 25, 2009 to the court, argues that the BIA's opinion in *Matter of Cabrera*, 24 I. & N. Dec. 459 (BIA 2008), removed any doubt that Retuta was "convicted" in the meaning of section 1101(a)(48). However, *Cabrera*, like *Ozkok*, only addresses sanctions actually imposed—in that instance, $458 in mandatory costs and surcharges, which it found to be a "punishment" or "penalty." *Id.* at 460. The opinion does at one point obliquely suggest that the fact that there must be consideration of ability to pay before enforcing collection of costs

imposed on Cabrera "does not mean their imposition is not a punishment." *Id.* at 462. Even if we were to accept, *arguendo*, the contention that the statute can permissibly be construed to regard the imposition of a small monetary sanction as a "punishment" or "penalty," *Cabrera* would not guide our decision here, since Retuta's fine was entirely stayed without specification of any conditions on the stay. Thus, *Chevron* does not dictate our determination of what, in the present context, the statute must be taken to mean. We must construe the statute for ourselves.

2.   Does the Definition of "Conviction" Exclude Judgments Where the Sentence is the Suspension of a Non-Incarceratory Sanction?

Retuta claims that, because the text of 8 U.S.C. § 1101(a)(48) specifically includes suspended periods of incarceration, it was intended to also exclude suspended sentences that do not involve a prison sentence. *See* 8 U.S.C. § 1101(a)(48)(B). The government, at oral argument, contended that the definition of "conviction" includes non-incarceratory suspended sentences because § 1101(a)(48)(B) should not be read to modify the preceding subsection. The government argues that subsection (B) was intended for the limited purpose of clarifying that, when immigration consequences attach to a period of incarceration, the entire sentence should be used, even if part of the period of incarceration has been suspended. According to the government, because subsection (B) was intended for this purpose it should not be read to limit the preceding subsection.

When dealing with a matter of statutory interpretation, " 'we look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress.' " *United States v. Mohrbacher*, 182 F.3d 1041, 1048 (9th Cir. 1999) (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 830 (9th Cir. 1996)).

Our reading of § 1101(a)(48) leads us to conclude that the definition of "conviction" does not include criminal judgments whose only consequence is a suspended non-incarceratory sanction. Our reading of subsection (A) and of subsection (B) confirms that an unconditional non-incarceratory suspended sanction cannot be a predicate for a "conviction."

[7] The text of subsection (A) does not include suspended non-incarceratory punishments. Congress placed the provision in section 1101, which contains an exhaustive list of definitions for use in construing the INA. Subsection (A)(ii) requires a "conviction" to have some punitive aspect by mandating that "the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed." Congress adopted this exact phrasing from the BIA's *Ozkok* opinion. *Ozkok*, 19 I. & N. Dec. at 551-52. At the same time Congress omitted a list of exemplars included in *Ozkok*. We must conclude that Congress intentionally omitted the exemplars, which included several minor sanctions such as "revocation or suspension of a driver's license, deprivation of nonessential activities or privileges, or community service."[3] The minute order here required less from petitioner Retuta than any of the exemplars in the *Ozkok* opinion that Congress chose not to adopt. In fact, the minute order requires nothing of Retuta. He suffered no loss of wealth, nor loss of liberty.

---

[3]The BIA's second prong read in its entirety: "the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community-based sanctions such as a rehabilitation program, a work-release or study-release program, revocation or suspension of a driver's license, deprivation of nonessential activities or privileges, or community service)." *Matter of Ozkok*, 19 I. & N. Dec. 546, 551-52 (BIA 1988). Congress appears not to have been the only body that found attaching removability to minor sanctions troublesome. *See Romero v. Holder*, 568 F.3d 1054, 1058 (9th Cir. 2009) (noting that the IJ found that requiring enrollment in a three-month AIDS education program was not a "form of punishment, penalty, or restraint on the alien's liberty").

Finding the suspended fine at issue here to be a sufficient basis for removal would render the requirement of a "punishment, penalty, or restraint on the alien's liberty" nearly meaningless. *Cf. De Vega v. Gonzales*, 503 F.3d 45, 49 (1st Cir. 2007) (focusing on whether a monetary sanction must be actually paid when considering whether it is a "punishment" or "penalty" as a predicate for ruling that restitution is a "punishment or "penalty" because "fail[ure] to make her payments . . . could ripen into a guilty plea and [the alien] would be subject to further punishment."). Congress, legislating in the wake of *Ozkok*, could, had it wished to do so, have reduced the showing needed for a "conviction" to a mere finding of guilt, regardless of whether a sanction was imposed, but instead it chose to retain the requirement of a punishment, penalty, or restraint on liberty.

**[8]** Furthermore, lest there were doubt as to subsection (A)'s meaning, Congress addressed the suspension of sanctions in subsection (B), choosing to include only suspended incarceratory sentences. By stating that suspended periods of imprisonment should be considered regardless of suspension, the statute makes clear that suspended sentences that are not periods of imprisonment are not included as punishments, penalties, or restraints on liberty. The placement of both subsections (A) and (B) in section 1101(a)(48) indicates they should be read together, as Congress could have placed subsection (B) in a section apart from the definition of conviction if its purpose was independent. Subsection (B), thus, modifies subsection (A)'s test of conviction to include a suspended period of incarceration as a "punishment, penalty, or restraint on the alien's liberty." *See Francis v. Gonzales*, 442 F.3d 131, 140 (2d Cir. 2006) (citing subsection (B) as intending to modify the definition of "conviction" developed in *Ozkok*). Subsection (B) therefore confirms that the text of section 1101(a)(48) excludes from the definition of "conviction" deferred judgments of guilt that only result in suspended non-incarceratory sentences.

**[9]** In short, we think it clear that § 1101(a)(48) does not contemplate that one who has been the object of a suspended fine is to be deemed to have suffered a "conviction." We would add, however, that if we were to view the statute as ambiguous, we would think it our duty to resolve the ambiguity favorably to the alien, pursuant to the principle of lenity applicable with respect to the gravity of removal. *See I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987); *Lara-Cazares v. Gonzales,* 408 F.3d 1217, 1221 (9th Cir. 2005). Removal is a harsh sanction, and profoundly so when, as here, the alien came to America as a small child and has spent almost two decades in this country.

**[10]** We must decide whether Retuta suffered any punishment, penalty, or restraint on his liberty when his non-incarceratory fine was stayed without any conditions placed on him during its abeyance.[4] We find he did not.

---

[4]The government urges us to remand to the BIA based on *I.N.S. v. Orlando Ventura*, 537 U.S. 12 (2002), for the BIA to reconsider whether a suspended non-incarceratory punishment is sufficiently punitive to meet the definition of conviction in 8 U.S.C. § 1101(a)(48). Remand under *Ventura* is required when an agency has not made a determination so the court can gain the advantage of the agency's expertise in the area and its informed discussion and analysis. *Ventura*, 537 U.S. at 17. We find *Ventura* inapposite to the situation before us.

Unlike *Ventura* where this court made a determination on a fact-dependent matter of first impression that the BIA failed to reach, *id.* at 15, here, the BIA considered and ruled on the issue. The BIA concluded that *Ozkok* governed and that *Ozkok* found a suspended fine to be punitive. The fact that *Ozkok* preceded Congress's definition of conviction and does not address suspended fines does not mean the BIA failed to take a position on the issue. The BIA did take a position on the issue and it is one with which, as explained above, we do not agree. Remand is not appropriate when the BIA addressed an issue and its opinion is reversed. *See Li v. Ashcroft*, 356 F.3d 1153, 1161 n.7 (9th Cir. 2004). The parties filed supplemental briefs regarding the impact of the BIA's decision not to rehear Retuta's appeal following our *Snellenberger* decision. Because the BIA's denial of rehearing addressed only the first point regarding the clarity of the minute order, we have given it no weight when considering remand of the section 1101(a)(48) issue.

## C.   Does Federal First Offender Act Apply?

Lastly, Retuta has challenged the BIA's finding that he was ineligible for relief under the FFOA because his rap sheet refers to other controlled substance convictions. Because we find that the government did not show Retuta to be removable, we need not address whether the FFOA could provide him with relief.

## Conclusion

**[11]** We hold that the minute order was sufficient to establish by clear, unequivocal, and convincing evidence that Retuta pled guilty to the charge of possession of a controlled substance and received a sentence of a suspended fine. We further hold that an unconditional suspended non-incarceratory sanction that has no present effect is not a punishment, penalty, or restraint of liberty under 8 U.S.C. § 1101(a)(48). Thus, the government has failed to prove Retuta was "convicted" of a controlled substance offense and, therefore, he has not been shown to be subject to removal. Because the Government presented no evidence sufficient to establish that Retuta was subject to removal, we grant the petition for review, reverse the order of removal, and remand to the Board for disposition consistent with this opinion.

Petition **GRANTED** and **REMANDED**.